Evangeline Coffman, Respondent, v Theodore Coffman, Appellant.

Second Department, December 19, 1977

182

## APPEARANCES OF COUNSEL

*Wilbur G. Silverman* for appellant.

*Jesse Rothman* for respondent.

### OPINION OF THE COURT

MOLLEN, J.

The plaintiff wife commenced this action pursuant to section 170-a of the Domestic Relations Law. She seeks an award "equivalent to the value of any economic and property rights of which" she was deprived by virtue of the judgment of divorce obtained against her pursuant to subdivision (5) of section 170 of the Domestic Relations Law. The defendant moved to dismiss the complaint on the grounds that (1) the statute is unconstitutional in that, by its very terms, it is to be applied retroactively; (2) it is an unconstitutional impairment of a contract; and (3) the plaintiff is precluded from maintaining the action by her waiver of any such rights. His motion was denied. We affirm.

The parties were married in 1948 and have five children. In 1965 the defendant husband sued for divorce and the wife counterclaimed for a legal separation. After the trial the complaint was dismissed and the wife was awarded a decree of separation on her counterclaim. In 1969, three years after the enactment of the Divorce Reform Law (L 1966, ch 254, eff Sept. 1, 1967 [Domestic Relations Law, § 170]), the husband commenced an action for divorce pursuant to subdivision (5) of section 170 based on the separation of the parties for two years (the requirement now is one year). Faced with the

futility of further resistance to the divorce, the wife withdrew her opposition and entered into a stipulation with her husband. The stipulation, which was incorporated into the judgment of divorce, is, in the words of Special Term: "merely a settlement of the then existing differences between the parties to the divorce action, including, *inter alia,* payment of alimony, responsibility for the payment of medical and dental services for the then infant issue, payment of counsel fees, and visitation rights. The said settlement of differences was fortified by the clause written into the typewritten agreement of settlement, and said clause indicated: 'Except as hereinabove provided, the parties release each other from any and all claims against each other.' "

Following the enactment of section 170-a of the Domestic Relations Law (originally enacted as subdivision [7] of section 170 of the Domestic Relations Law [L 1974, ch 1047], the provision was renumbered by chapter 415 of the Laws of 1975), the wife commenced the instant action.

Section 170-a provides:

"a. A spouse against whom a decree of divorce has been obtained under the provisions of subdivision five or six of section one hundred seventy of this chapter, where the decree, judgment or agreement of separation was obtained or entered into prior to January twenty-first, nineteen hundred seventy, may institute an action in which there shall be recoverable, in addition to any rights under this or any other provisions of law, an amount equivalent to the value of any economic and property rights of which the spouse was deprived by virtue of such decree, except where the grounds for the separation judgment would have excluded recovery of economic and property rights.

"b. In determining the value of the economic and property rights described in subdivision a hereof, the plaintiff's interest shall be calculated as though the defendant died intestate and as if the death of the defendant had immediately antedated the divorce.

"c. If the defendant shall establish that intervening circumstances have rendered an award described in subdivision a hereof inequitable, the court may award to the plaintiff such portion of such economic and property rights as justice may require.

"d. If the defendant shall establish that the plaintiff has expressly or impliedly waived all or some portion of the

aforesaid economic or property rights, the court shall deny recovery of all such rights, or deny recovery of the portion of such rights as justice may require.

"e. Actions under this subdivision may be brought:

"(i) Within two years of the enactment of this section, or

"(ii) Within two years of the obtainment of the subject divorce, whichever is later."

In denying the motion to dismiss the plaintiff's complaint, Special Term ruled that there was no extrinsic proof offered by the defendant that would establish an intention by the plaintiff to release him beyond the matters specified in the stipulation, or those not then within the contemplation of the parties. It also rejected the defendant's attack on the constitutionality of section 170-a on the ground that he failed to rebut the strong presumption of constitutionality which attaches to a statute.

The events preceding and underlying the enactment of section 170-a are most germane to the resolution of the issues herein. In 1970 the Court of Appeals decided *Gleason v Gleason* (26 NY2d 28). There, the plaintiff husband sued his wife for divorce pursuant to the no-fault conversion divorce provision of the Divorce Reform Law (Domestic Relations Law, § 170, subd [5]). The court ruled that the plaintiff husband, the "guilty" party in the prior separation action between the parties, could obtain the divorce, and the statute could be applied retroactively to the separation decree entered prior to the enactment of the new divorce law. By granting the divorce, the wife was cut off from all marital rights she would have had as a surviving spouse in her husband's estate at the time of his death.

Nevertheless, the court ruled that such economic rights are not vested until the death of the husband because they are inchoate and expectant. The wife had argued that such action, effected by the retroactive application of the statute, was unconstitutional as violative of the due process, equal protection and impairment of contract clauses. The court upheld the constitutionality of the section and the consequences which flowed therefrom, but signaled the Legislature that a remedy for wives in such situations could be fashioned by appropriate legislation. The court wrote *(Gleason v Gleason, supra,* p 43):

"It is perfectly obvious—as the facts in the cases before us establish—that 'denial of legal recognition to *de facto* dissolu-

tion will not revive or reinstate the marriage as a functioning status.' (1 Foster and Freed, Law and the Family [1969 Cum. Supp.], § 6:3-d, p. 30.) *If the loss of the wife's prospective right of inheritance is thought to occasion economic inequity when the husband converts the separation decree into a divorce, redress or alleviation must be left to the Legislature. That body could, if so minded, amend the law so as to grant discretion to the courts to award her an amount in lieu of such prospective inheritance right. Be that as it may, the simple fact is that the larger public interest demonstrated by the present legislation requires that there be a legal termination of dead marriages."* (Emphasis supplied.)

The Legislature then enacted the statute here involved. The memorandum in support of and accompanying the bill introduced by Assemblyman Gordon Burrows clearly reveals that the Legislature enacted the statute in response to the Court of Appeals' decision in *Gleason.* That memorandum reads, in part (NY Legis Ann, 1974, pp 38-39):

"Obviously, when these couples separated, they did not and could not know that such separation would some day constitute grounds for divorce. What they expected, and quite rightly, was that, although they maintained two separate households, they remained *and would forever remain, husband and wife, and would therefore forever retain and be entitled to all rights, including inheritance, which normally belong to legally married persons.* But when such separation agreements became grounds for divorce, they became vehicles by which either spouse could cut off the very marital rights which such arrangements appeared forever to formalize and protect.

"When the aforementioned 1966 reform went into effect, many people converted pre-1966 separations into divorces. This meant that their spouses found themselves quite unexpectedly cut off from rights of property and/or inheritance to which they had, quite rightly, expected to remain forever entitled.

"In 1970, the Court of Appeals *(Gleason v. Gleason,* 26 N. Y. 2d (1970)) declared that the courts could provide no remedy for or recovery of, such marital rights so unexpectedly cut off. The court stated that any procedure or remedy under which such rights could be sought and recovered would have to be provided by the Legislature. Under this bill, the Legislature is providing such a remedy.

"This bill is aimed *ONLY* at the recovery of marital rights unexpectedly lost due to the conversion into divorce of separation arrangements made prior to the Gleason decision. It is, therefore, limited to decrees, judgments or agreements of separation obtained prior to January 21, 1970, the date of the Gleason decision." (Emphasis in original.)

■ We first address ourselves to the question of the impact of the "waiver" of rights. If the release contained in the stipulation is effective, then subdivision d of section 170-a precludes this action. The "waiver" was handwritten at the end of a typed stipulation. Designated as paragraph "10A", it reads: "Except as hereinabove provided, the parties release each other from any and all claims against each other." The defendant contends that the clear and unambiguous language of the stipulation constituted a waiver of the claim made here. He cites the general rule that a release should only be set aside if duress, illegality or fraud is established *(Mangini v McClurg,* 24 NY2d 556). However, in *Mangini* the court refused to grant defendant summary judgment dismissing an action which sought to set aside a release given by the plaintiff in settlement of a negligence action. The court held the releasor could prove that the general release was not applicable to uncontemplated transactions. Similarly, in *Rubinstein v Rubinstein* (109 NYS2d 725, affd 279 App Div 1073, affd 305 NY 746), the court stated (p 732): "that where 'a release contains a recital of a particular claim, obligation, or controversy and there is nothing on the face of the instrument, other than general words of release, to show that anything more than the matters particularly specified was intended to be discharged, the general words of release are deemed to be limited thereby'. *Mitchell v. Mitchell, supra,* 170 App. Div. at 456 * * * *Haskell v. Miller,* 221 App. Div. 48 * * * affirmed 246 N.Y. 618 * * * *Simon v. Simon,* 274 App. Div. 447 at 449 * * * No extrinsic proof to establish an intention to release beyond the matters specified was offered. See, e.g. *In re Edward's Will,* 194 Misc. 681 * * * affirmed 274 App. Div. 871 * * * 299 N.Y. 553 * * * Hence, the defense of release falls."

It is clear that the release in the stipulation here only dealt with the matters discussed in the stipulation, i.e., alimony, expenses for the children, counsel fees, custody and visitation. It is illogical to assume that at the time the release was executed (Oct., 1969) the parties could have contemplated that

a statute would be enacted several years later creating the cause of action here sued on. The statute was enacted only in response to *Gleason v Gleason (supra),* and that case was not decided until after the stipulation was executed by the parties.

The defendant questions the constitutionality of the statute on the ground that its retroactive application is a violation of due process.

■ The passage of the legislation, following the *Gleason* case, indicated clearly that the statute is remedial. The general rule for retroactive application of a statute is that statutes are construed as prospective, unless the language of the statute, either expressly or by necessary implication, requires that it be given a retroactive construction. But "[r]emedial statutes constitute an exception to the general rule that statutes are not to be given a retroactive operation, but only to the extent that they do not impair vested rights" (McKinney's Cons Laws of NY, Book 1, Statutes [hereafter Statutes], § 54, subd a).

■ Remedial statutes are those "designed to correct imperfections in prior law, by generally giving relief to the aggrieved party" (Statutes, § 35).

The major issue in *Gleason* was the retroactive effect of the new ground for divorce, i.e., the conversion of a separation decree to a divorce without fault being shown. In upholding the retroactive effect of that statute, and at the same time calling for the Legislature to adopt the instant statute, it seems clear that the court intended to have such a statute apply retroactively to redress the termination of marital rights of an innocent spouse who is faced with a judgment of divorce obtained by a "guilty" spouse after the required period of separation.

■ The statute is very specific. In addition to providing relief only to persons who had a "decree, judgment or agreement" which was entered or obtained prior to January 21, 1970, the date of the *Gleason* decision, the statute limits the relief provided to a spouse against whom a decree of divorce is obtained. Thus, a party who converts a separation decree or agreement into a divorce could not then seek the benefit of the statute. It applies only to the facts of *Gleason,* where the separation occurred prior to the *Gleason* decision, and the "innocent" spouse now finds that the existing marital rights, upon which he or she relied, were cut off when the "guilty" spouse was able to convert that separation into a final judg-

ment of divorce and thereby terminate the rights that the spouse (e.g., the plaintiff herein) would have been entitled to receive.

■ These may include Social Security and pension rights, the right to inherit from the spouse's estate, and a right in the marital status itself (see *Gleason v Gleason, supra,* p 40). In addition, the statute places a value on the prospective right of inheritance.

■ At the trial of the action, such factors as the length of time the parties were separated, the wealth of the parties, the life expectancy of the parties, and any other appropriate factors may be considered to determine the extent of the award, if any, consistent with the provisions of subdivision c of section 170-a, which allows a court to deny any recovery "as justice may require."

The memorandum in support of the legislation reads (NY Legis Ann, 1974, p 39):

"The bill next provides a general definition or delineation of the rights recoverable under the new section. This basic definition is deliberately drafted in a broadly-interpretable fashion because there are simply too many possible variables to make any narrower definition practicable. This very broad basic definition of recoverable rights is subject to provisions which grant significant latitude for each court to fashion the most equitable individual recovery in each individual case.

"Toward the aforesaid end of providing a broad definition of the general remedy, the plaintiff spouse is given the right to sue for 'an amount equivalent to the value of any economic and property rights of which the spouse was deprived . . .' In order to provide the aforesaid judicial latitude to fashion the most equitable individual remedies, the bill mandates that in determining what economic and property rights shall actually be recovered, the court may take into account 'intervening circumstances.' With this latitude, the court may study such important factors as the actual financial situation of each party, the subsequent remarriage of either party, and the economic ramifications thereof, any change or changes in the financial situation of either party since the date of the divorce, and so forth. The bill also allows the court to consider whether the plaintiff spouse has expressly or impliedly waived any or all such rights.

"With the plaintiff spouse being provided the basic remedy of suit for any rights to which he or she would have been

entitled up to the date of the actual divorce, and with the court left free to look into the entire present financial situation of both spouses, under the 'intervening circumstances' and 'express or implied waiver' language, it is believed that this bill leaves a court with a workable basic definition of what may be sought in such a case, but with enough latitude to fashion the most equitable individual remedies."

Thus, the statute creates a cause of action allowing the divorced spouse to seek a recovery for the rights he or she was deprived of by the act of the now former spouse.

■ We next address ourselves to the argument that the statute is unconstitutional in that it violates the prohibition against impairment of contracts contained in the Federal Constitution. This contention lacks substance.

■ In *Gleason (supra)* the court was faced with the same argument. There, the court stated (pp 42-43):

"Nor is there substance to the further contention that the statute unconstitutionally impairs contract rights. 'Marriage is not a contract', we wrote in *Fearon v. Treanor* (272 N.Y. 268, 272, app. dsmd. 301 U.S. 667), 'within the meaning of the provision of the Federal Constitution which prohibits the impairment by the States of the obligation of contracts.' This being so, 'rights growing out of the [marriage] relationship may be modified or abolished by the Legislature without violating the provisions of the Federal or State Constitution which forbid the taking of life, liberty or property without due process of law.' *(Hanfgarn v. Mark,* 274 N.Y. 22, 25, app. dsmd. 302 U.S. 641; see *Maynard v. Hill,* 125 U.S. 190, 210, supra; *Trustees of Dartmouth Coll. v. Woodward,* 4 Wheat. [17 U.S.] 518, 629; see, also, 2 Cooley, Constitutional Limitations [8th ed. 1927], pp. 751-752.) And, in the *Dartmouth College* case, Chief Justice MARSHALL, addressing himself to the subject, stated (17 U.S., at p. 629): 'The provision of the constitution never has been understood to embrace other contracts, than those which respect property, or some object of value, and confer rights which may be asserted in a court of justice. It never has been understood to restrict the general right of the legislature to legislate on the subject of divorces.'

"Before bringing this opinion to a close, we note that, when confronted with constitutional challenges such as those now urged upon us, the high courts of a number of jurisdictions have upheld the retroactive application of similarly constructed legislation permitting divorce either where the par-

ties had been living apart pursuant to an 'old' separation decree (see, e.g., *Stallings v. Stallings,* 177 La. 488; *Hagen v. Hagen,* 205 Va. 791) or where they had simply been living apart for a specified period. (See, e.g., *Tipping v. Tipping,* 82 F. 2d 828; *Fuqua v. Fuqua,* 268 Ala. 127; *Hurry v. Hurry,* 144 La. 877; *Campbell v. Campbell,* 174 Md. 229; *McGinley v. McGinley,* 295 S. W. 2d 913 [Tex.]. See, also, Ann., Divorce Statute —Retrospective Effect, 23 ALR 3d 626, 633-636.) 'It has been held by the highest authority', wrote the Federal Court of Appeals for the District of Columbia, 'that marriage is an institution of society, creating a status which may be regulated and controlled by public law; that legislation affecting the institution or annulling the relation between the parties is not within the prohibition of the Constitution of the United States against the impairment of contracts, or against ex post facto laws.' *(Tipping v. Tipping,* 82 F. 2d 828, 830, *supra.)"*

And in *Hanfgarn v Mark* (274 NY 22, 25) cited in *Gleason,* the court held:

"It has been expressly decided by the United States Supreme Court that marriage is not a contract within the meaning of the Federal Constitution which prohibits the States from impairing the obligation of contracts. (U.S. Const. art. I, § 10; *Maynard v. Hill,* 125 U.S. 190.)

"Marriage has been frequently referred to as a contract in judicial opinions, by textwriters and in statutes. Nevertheless, it is not a common law contract as generally understood. It has some of the attributes of such a contract, but contains many elements foreign to a common law contract. It may be lawfully entered into by parties under twenty-one years of age. It cannot be dissolved by consent of the parties. After marriage, the State imposes duties and obligations upon the parties entirely outside of the marriage agreement. The relation entered into by the parties is regulated by the State.

" 'It partakes more of the character of an institution regulated and controlled by public authority, upon principles of public policy, for the benefit of the community.' *(Wade v. Kalbfleisch,* 58 N.Y. 282, 284.)

*"Not being a common law contract, the relation may be regulated, controlled and modified and rights growing out of the relationship may be modified or abolished by the Legislature without violating the provisions of the Federal or State Constitution which forbid the taking of life, liberty or prop-*

*erty without due process of law.* (N.Y. Const. art. I, § 6; U.S. Const. Fourteenth Amendment.)" (Emphasis supplied.)

It would indeed be ironic if we were to strike down a law which was clearly suggested and initiated by a ruling of the Court of Appeals and intended by the Legislature to provide for the loss of the prospective right of inheritance lost by a spouse in what amounts to an uncontestable divorce action.

■ Finally, the defendant has failed to overcome the presumption of constitutionality which attaches to the enactment of a statute. (See *Wiggins v Town of Somers,* 4 NY2d 215; 8 NY Jur, Constitutional Law, § 59.) In this case, this presumption is made even stronger by the language in *Gleason* which calls upon the Legislature to enact such a provision.

Accordingly, the order of Special Term should be affirmed insofar as it has been appealed from.

DAMIANI, J. P., SHAPIRO and O'CONNOR, JJ., concur.

Order of the Supreme Court, Queens County, dated December 3, 1976, affirmed insofar as appealed from, with $50 costs and disbursements.