OPINION OF THE COURT
Steven B. Derounian, J.
This action was commenced by the plaintiff wife pursuant to section 170-a of the Domestic Relations Law. She seeks a money judgment in an amount equivalent to one third of the defendant’s estate of which she was deprived by virtue of the judgment of divorce obtained against her by her husband pursuant to subdivision (5) of section 170 of the Domestic Relations Law granted on August 30, 1976 and entered in the office of the clerk of the County of Nassau on September 16, 1976. Defendant’s answer includes four affirmative defenses and demand for judgment dismissing the complaint.
The defendant’s affirmative defenses are: (1) that intervening circumstances have occurred which render any award to the plaintiff herein inequitable; (2) that the plaintiff has expressly or impliedly waived whatever economic or property rights the plaintiff allegedly claims; (3) that the plaintiff has actually been benefited in her economic and property rights by virtue of the judgment of separation of May 20, 1969, and also by virtue of the judgment of divorce of September 16, 1976; and (4) the defendant alleges that section 170-a of the Domestic Relations Law of the State of New York is unconstitutional and against the public policy of this State.
At the outset of the trial, the defendant withdrew and discontinued his fourth affirmative defense attacking the constitutionality of the statute.
The parties were married in 1936 and had three children *906 now all over the age of 21 years and emancipated. In 1969 plaintiff obtained a judgment of separation against the defendant upon the grounds of his abandonment of her. Said judgment was granted by the Supreme Court of Westchester County on May 20, 1969. In 1976, the defendant commenced an action for divorce pursuant to subdivision (5) of section 170 of the Domestic Relations Law based upon the separation decree and that the parties had been living separate and apart for a period of two years after the granting of the judgment of separation.
It is plaintiff’s position that upon the defendant obtaining a conversion divorce, the plaintiff was effectively deprived of economic and property rights in an amount equal to a widow’s rights to an intestate share in defendant’s estate in July of 1976 (Domestic Relations Law, § 170-a, subd b). The court will deal with the affirmative defenses seriatim. The first affirmative defense is that intervening circumstances have occurred which would render any award to the plaintiff herein inequitable (Domestic Relations Law, § 170-a, subd c).
The intervening circumstances alleged and testified to were, first, that the defendant has remarried since the divorce between these parties; secondly, that the defendant is now three years older than he was at the time of the divorce; third, that the divorce which was granted to the defendant in 1976 provided that the former marital home in Harrison, New York, be sold and had that direction been complied with, the defendant would have had the benefit of earning some income on his share from the proceeds of the sale of that house. These "intervening circumstances” occurred subsequent to the date of the divorce, namely, August, 1976, to date, and, in the court’s view, do not, within the meaning of the statute, constitute a defense to this action. The remarriage of the defendant was of his own making and freely entered into by him. The fact that the defendant is three years older has not in any way, in the court’s view, and based upon the testimony adduced at this trial, diminished his income, which principally came from investments rather than from active employment. As to the fact that the plaintiff failed to follow the direction of the trial court, wherein it ordered that the marital home in Harrison, New York, be sold, that is equally irrelevant since the defendant had adequate and ample legal remedies to force that sale under several judgments and orders entered prior hereto. That he chose not to force the sale of that marital *907 home, for whatever reason, is of no consequence to the court and cannot in any way be characterized as an intervening circumstance sufficient to defeat plaintiffs action. Finally, the defendant asserts that some of his assets have diminished in value, but the court found no clear or persuasive evidence that there has been any substantial or any disturbing diminution in the value of those assets. In a word, therefore, the affirmative defense of intervening circumstances and the testimony introduced in support of that affirmative defense is wholly unpersuasive to this court.
The court’s research has failed to disclose a single reported case in this State dealing with the issue of what constitutes "intervening circumstances” within the meaning of the statute. Having no precedent by way of case law to deal with on this point, it is left to the court to determine whether the events and circumstances testified to during the trial of this case are such as would constitute a defense to this action within the meaning of section 170-a of the Domestic Relations Law. The court concludes, based upon the credible evidence, that the intervening circumstances testified to do not constitute a defense to this action.
During the trial, and in a posttrial memorandum submitted by counsel for the defendant, his most vigorous attack is grounded on the affirmative defense of "waiver”. (Domestic Relations Law, § 170-a, subd d.) It was and is the position of the defendant that at the time the plaintiff instituted her action for a judgment of separation on June 26, 1967 by the service of a summons followed by the service of her verified complaint on July 7, 1967, she was or should have been aware of the amendments to section 170 of the Domestic Relations Law, which were approved on April 27, 1966. Moreover, she pursued that action for separation well past the date of the enactment of the changes to section 170 of the Domestic Relations Law, and particularly subdivision (5) thereof which became effective on September 1, 1967. It was not until April 1, 1969 that the court rendered a decision in her separation action in which, among other things, she was granted an award of alimony. The court disagrees that there has been any demonstration by the defendant that the plaintiff at any time waived her rights under section 170-a since that section of the Domestic Relations Law was not enacted and did not become effective until 1975. One cannot waive a right which does not exist. This action by plaintiff was commenced within *908 the statutory time limits following enactment of section 170-a in 1975. The enactment of section 170-a was discussed at length by the Appellate Division, Second Department, in Coffman v Coffman (60 AD2d 181). In Coffman, the court said (supra, pp 188-189): "The statute is very specific. In addition to providing relief only to persons who had a 'decree, judgment or agreement’ which was entered or obtained prior to January 21, 1970, the date of the Gleason decision, the statute limits the relief provided to a spouse against whom a decree of divorce is obtained. Thus, a party who converts a separation decree or agreement into a divorce could not then seek the benefit of the statute. It applies only to the facts of Gleason, where the separation occurred prior to the Gleason decision, and the 'innocent’ spouse now finds that the existing marital rights, upon which he or she relied, were cut off when the 'guilty’ spouse was able to convert that separation into a final judgment of divorce and thereby terminate the rights that the spouse (e.g., the plaintiff herein) would have been entitled to receive.” Moreover, the legislative memorandum accompanying the enactment of section 170-a of the Domestic Relations Law reads in part: "This bill is aimed ONLY at the recovery of marital rights unexpectedly lost due to the conversion into divorce of separation arrangements made prior to the Gleason decision. It is, therefore, limited to decrees, judgments or agreements of separation obtained prior to January 21, 1970, the date of the Gleason decision.” (NY Legis Ann, 1974, p 39; emphasis in original.) That cutoff date of January 21, 1970 not only appears in the legislative memorandum, but appears in the very body of subdivision a of section 170-a which reads as follows: "A spouse against whom a decree of divorce has been obtained under the provisions of subdivision five or six of section one hundred seventy of this chapter, where the decree, judgment or agreement of separation was obtained or entered into prior to January twenty-first, nineteen hundred seventy, may institute an action in which there shall be recoverable, in addition to any rights under this or any other provisions of law, an amount equivalent to the value of any economic and property rights of which the spouse was deprived by virtue of such decree, except where the grounds for the separation judgment would have excluded recovery of economic and property rights.”
The January 21, 1970 date appearing in section 170-a of the Domestic Relations Law is the very day upon which the Court *909 of Appeals handed down its decision in Gleason v Gleason (26 NY2d 28). Had the statute not included that date, this court might have seriously considered the affirmative defense of waiver, but due to the fact that the State Legislature, for reasons best known to it, chose to include that specific date as a cutoff date, this court cannot hold that the plaintiff has either expressly or impliedly waived her statutory rights pursuant to section 170-a.
Based upon all of the foregoing, this court must conclude that plaintiff is entitled to judgment in this case. The final issue to be determined is the sum to which plaintiff shall be entitled. Pursuant to subdivision b of section 170-a of the Domestic Relations Law, the value of the economic and property rights and interest to which the plaintiff is entitled "shall be calculated as though the defendant died intestate and as if the death of the defendant had immediately antedated the divorce.” At the conclusion of defendant’s divorce action before Mr. Justice Berman, the court at that time, and under date of July 19, 1976, rendered its decision. That decision of Mr. Justice Berman covered in great detail the income and assets of the respective parties herein, particularly that of Mr. Pearson. Mr. Justice Berman concluded after hearing all of the evidence that "Plaintiff’s total net worth, taking into consideration his one-half equity in the Harrison home occupied by the defendant, and the value of his later acquired home at Atlantic Beach, and another parcel of property in which he has a small interest, according to the Court’s calculation amounts to approximately $1,650,000.” This court accepts and adopts Judge Berman’s evaluation of Mr. Pearson’s net worth at $1,650,000 "at a time immediately antedating the divorce”. Accordingly, therefore, the plaintiff is granted judgment against the defendant in the amount of $550,000, with costs and disbursements.
During the course of the trial, and in the memoranda of law submitted by the respective attorneys following the conclusion of the trial, it has been urged that if there was a favorable award for the plaintiff, there should be consideration given to a modification of plaintiff’s present alimony which she has been receiving for many years. That issue is not before this court, nor will the court rule on it. Until the decision and judgment to be rendered herein has either been implemented, appealed from, or otherwise terminated by stipulation between the parties, it would be premature for the court to *910 address itself to the question of whether the plaintiff’s alimony should be modified downward or, indeed, whether it should be entirely eliminated. (See Orr v Orr, 440 US 268.)
It is clear that in enacting section 170-a of the Domestic Relations Law in 1975, the State Legislature was attempting to remedy the inequities that arose because of the Gleason case. Moreover, the plaintiff now having reached 65 years of age, while her former husband is now 68 years of age, there was a distinct possibility that if the former husband died the plaintiff would no longer be entitled, nor would she receive, alimony, and having no other income or assets she might very well find herself destitute. Put another way, the State Legislature sought by enacting this statute to protect "innocent” spouses and, in the court’s view, has accomplished that result. In future, and pursuant to this court’s reading of the statute, any woman who brings a separation action after April 1, 1970 is placed on notice by the provisions of the statute that she may be waiving any future rights she may have to her husband’s assets or estate. Prior to that date, that was not so.
The court must finally conclude its decision by addressing itself briefly to some extraneous matters which understandably came to its attention during the course of the trial. These two parties have been in almost constant litigation since 1968, so that each of them has appeared to imprison himself within the walls of such litigation from which there appears to be no respite. There seems to be between them some consuming or unquenchable thirst for revenge and/or retribution. The plaintiff is 65 years of age and the defendant is 68 years of age and yet, having reached that point in life, they seem to be content in squandering time as if it were an endless banquet. As the court has observed the demeanor of each and heard their testimony, they both appear to be drenched in an orgy of recrimination and appear to be content with wasting the one irreplaceable ingredient of life, namely, time. A continuance of such protracted litigation can only lead to a mutual bankruptcy of their physical and emotional resources. It is to be hoped, and the court would urge upon both parties, that the time for making peace between them is long overdue.