(April 2, 1987)

■ ADAMS DRUG COMPANY, INC., Respondent, v FRANKLIN KNOBEL et al., Appellants.—Order of the Supreme Court, New York County (Michael J. Dontzin, J.), entered July 31, 1985, which granted plaintiff's motion for leave to amend its complaint so as to allege new causes of action and add as parties defendant Levittown Norse Associates, Supermarkets General Corporation, Innovative Audio Products, Inc., and Hedy's Boutique, Inc., and which denied defendants' cross motion for summary judgment, modified on the law and the facts and in the exercise of discretion, to the extent of denying plaintiff's motion for leave to amend insofar as it pertains to the second and fifth causes in plaintiff's proposed amended and supplemental complaint, and, except as modified, affirmed, with costs to defendants.

Plaintiff Adams Drug Company, Inc. leased store space at premises owned by defendant Roslyn Bender and managed by her agent, defendant Franklin Knobel, situated in Brooklyn at 168 Montague Street. On March 27, 1982, a fire rendered the space leased by plaintiff untenantable. By letter dated April 6, 1982, plaintiff was notified that more than 50% of the premises had been destroyed and that the landlord had determined that restoration was not economically feasible. The letter concluded by indicating that the landlord had decided to terminate plaintiff's lease effective March 28, 1982. Plaintiff subsequently commenced the within action for declaratory and injunctive relief, and for $2,000,000 in punitive damages, alleging that the termination of its tenancy was not in conformity with the governing lease terms. As is here relevant, the lease provided: "If more than 50% of the gross area of the building is damaged by fire or other casualty and reasonably cannot be restored to the pre-existing condition during the Re-

building Period (i) landlord may if landlord decides not to rebuild the building elect to terminate this lease by giving notice to the tenant of such election or (ii) tenant may elect to terminate this lease by giving notice to the Landlord of such election provided however that such notice by landlord or tenant is given within the period of 30 days after the date on which such damage occurs."

Following a nonjury trial, Trial Term found that upwards of 75% of the premises had been destroyed by the March 27, 1982 fire and that the structure could not be restored to its preexisting condition within the 120-day rebuilding period set forth in the lease. The court concluded that the lease had been properly terminated. Judgment was entered June 10, 1983 dismissing the complaint.

On appeal, this court, by order entered June 19, 1984 [102 AD2d 735], modified the judgment to the extent of disposing of the first cause of action, which had been dismissed by Trial Term, by declaring in the landlord's favor that the lease termination was proper. In all other respects the judgment was affirmed.

By order dated January 15, 1985, the Court of Appeals reversed this court's determination. It did so on the ground that the Trial Judge, in omitting to make any finding as to whether the landlord intended to rebuild the subject premises, had not considered whether termination of plaintiff's tenancy had been effectuated in good-faith observance of the lease terms. *(Adams Drug Co. v Knobel,* 64 NY2d 768, 770.) The matter was remanded for a new trial.

Soon after the Court of Appeals determination, plaintiff moved to amend its complaint. It sought to add as parties defendant the new owner of the premises, Levittown Norse Associates (LNA), and its tenants, Supermarkets General Corporation, Hedy's Boutique, Inc., and Innovative Audio Products, Inc. Other notable changes in the proposed amended complaint included a second cause of action alleging, in essence, that defendants should be estopped from claiming that their decision not to rebuild was made in good faith, and a fifth cause of action claiming compensatory damages of $2,376,000, which if trebled pursuant to RPAPL 853 would amount to a total claim of $7,128,000.

Defendants opposed the proposed amendments and cross-moved for summary judgment.

Special Term granted plaintiff's motion and denied that of defendants, whereupon the present appeal by defendants ensued.

Following the Court of Appeals ruling in this matter, there remains just one substantive issue to be determined, namely whether defendants in fact made a good-faith decision not to rebuild at the time plaintiff was notified of the lease termination. Although an examination of the voluminous trial record discloses substantial evidence bearing on the good-faith issue from which it would be possible to make the necessary factual determination—and it may be added we would be strongly disposed to make it in defendant's favor—that determination may not be made by this court at this time. We are mindful that the Court of Appeals did not remand the within matter to this court for the exercise of our fact-finding power. Rather, in reversing, it directed unequivocally that there must be a new trial. Although we do not think that this direction would necessarily preclude a summary disposition, summary judgment is nonetheless inappropriate. The good-faith issue is one of a factual sort and the evidence contained in the record is not so conclusive as to resolve it as a matter of law one way or the other. Although plaintiffs at trial made a strong showing that rebuilding the premises would have been economically infeasible, and it is undisputed that no rebuilding of the subject premises occurred before their transfer to LNA, it is also the case that the trial evidence indicated that defendants did confer with an architect and a contractor concerning the building's eventual reconstruction and did make representations before the Building Department that rebuilding would occur. The record as a whole then raises a factual question as to defendants' true intention respecting rebuilding which cannot be properly resolved in advance of trial. As is often observed, issue finding, not issue resolution, is the court's function on a summary judgment motion. *(See, e.g., Capelin Assocs. v Globe Mfg. Corp.,* 34 NY2d 338, 341; *D.B.D. Nominee v 814 10th Ave. Corp.,* 109 AD2d 668, 669.) It is impossible for us to grant summary judgment to either party in this dispute without running afoul of this basic principle.

Turning now to that part of plaintiff's motion seeking to add as parties defendant LNA and the new tenants of the subject premises, we think that joinder was properly granted by Special Term. We note that plaintiff's motion was timely, coming as it did shortly after the Court of Appeals determination. We note further that, but for defendants' strenuous objection, LNA would have been made a party to this action in advance of the initial trial. Concerning the new tenants, as it was only subsequent to the trial that LNA completed rebuilding the premises, it was not until then that their

identity was ascertained. At that time, however, plaintiff, who was in the process of seeking appellate review of the final judgment against it, did not have the option of moving for the new tenants' joinder. Only after the Court of Appeals reversal was any motion respecting the new tenants appropriate, and indeed, as noted, that was in fact when the present motion was made. Not only is plaintiff's motion for joinder timely, but as a practical matter, it is clear that LNA and the new tenants should be joined since they would likely all be adversely affected by a judgment in plaintiff's favor restoring it to possession of the premises.

Although we recognize that leave to amend, pursuant to CPLR 3025 (b), is generally given freely, a motion to amend must still be made in reasonably timely fashion and should not be granted where late amendment would be prejudicial to the opposing party. *(See, e.g., Fulford v Baker Perkins,* 100 AD2d 861; *see also,* Siegel, NY Prac § 237, at 289.) As we think that plaintiff's proposed second and fifth causes have not been timely pleaded, and that permitting their assertion at this stage in the litigation would prejudice defendants, we modify Special Term's order so as to deny plaintiff's motion for leave to add the proposed second and fifth causes to its complaint.

Plaintiff's proposed second cause seeks declaratory and injunctive relief restoring plaintiff to possession of the leased premises on the theory that even if defendants Knobel and Bender did not intend to rebuild, they are precluded from defending on that ground since they allegedly made contrary representations to the Building Department of the City of New York. Certainly, this theory of recovery could have been pleaded prior to the initial trial. Indeed, as the evidence adduced indicated, plaintiff was well aware at the time of the first trial of defendants' representations before the Building Department. The injection of an additional and somewhat novel legal theory of recovery at this late date may lead to yet another round of motion practice and appeals in this already prolonged action. Clearly, defendants, who now include the new owner and tenants of the subject premises, should not be subjected to the possibility of a still more protracted period of uncertainty, when plaintiff might easily have avoided the possibility of additional delay at this advanced stage in the litigation, by asserting its proposed second cause before the first trial.

To permit the assertion of plaintiff's proposed fifth cause at this time would also be untimely and prejudicial. In its original complaint plaintiff, although it requested no compen-

satory damages, sought a punitive award of $2,000,000. Now plaintiff not only seeks compensation in the amount of $2,376,000, but a trebled award pursuant to RPAPL 853. Plaintiff, who attempted to make LNA a party to this action well before the first trial and both deposed and called as a witness at the first trial Norman Friedman, a partner in LNA, was well aware that the premises were to be reconstructed and relet by LNA. The theory of damages which plaintiff now pursues in seeking compensation for its alleged wrongful eviction, i.e., that it is entitled to the difference between the actual rental value and its agreed-upon but unpaid rent (see, e.g., *Mid Hudson Recreational Centers v Fallon,* 96 AD2d 855), might easily have been pleaded in advance of the first trial. The prejudice to defendants in plaintiff's belated assertion of its need for compensatory damages should be clear. The original defendants and LNA, who negotiated the sale of the subject premises after the commencement of the action, aware of the risks posed by a judgment for plaintiff on the original complaint, provided accordingly in their structure of the sale. Viewing the complaint as stating a claim primarily for declaratory and injunctive relief, they made specific allowances for the possibility of an order of possession in plaintiff's favor. Quite reasonably, they did not consider the likelihood of a punitive award high in what they perceived as essentially a private dispute (see generally, *American Elecs. v Neptune Meter Co.,* 30 AD2d 117). Had either the buyer or seller been aware that their transaction might, in view of a pending claim, result in compensatory liability of $376,000 more than the original punitive claim, trebled pursuant to RPAPL 853, the sale might not have taken place at all, and if it had, it would be expected that it would have been differently structured.

Accordingly, in light of the prejudice to defendants, leave to amend so as to add the proposed fifth cause of action should not have been permitted. Concur—Murphy, P. J., Sullivan, Asch and Wallach, JJ.