OPINION OF THE COURT
Peter Tom, J.
Plaintiffs move for an order, pursuant to CPLR 3025 (b), granting leave to serve an amended verified complaint to include a cause of action based on Navigation Law § 181 which permits a private right action against a person who discharges petroleum into the waters of the State for the costs of cleanup and removal as well as related damages.
Plaintiff Henry Mendler owns the residential dwellings and the real property located on Foster Road, Canaan/Austerlitz, Columbia County, New York. Plaintiff Joseph Mendler is the son of Henry Mendler and is a part-time resident, with his family, in one of the aforementioned dwellings (to be referred to herein as the Dwelling or the House). The Dwelling was heated by an oil fueled heating system which was supplied by oil stored in an underground tank.
In or about October 1989, plaintiffs approached defendant A.D. Winston Corp. (Winston), a company engaged in the business of selling and servicing heating equipment and parts, for the purpose of purchasing a new oil storage tank. Plaintiffs assert that they informed Winston that the tank would be installed underground and that they relied upon Winston’s expertise and recommendation to purchase the 550-gallon tank in issue (the Tank) from Winston.
Plaintiffs then contracted Ted Bombola, individually and doing business as Surowiec Trucking & Excavating (Bombola), to excavate, place and level the Tank in the designated area. Defendant Donald C. Kraft, individually and doing business as Chatham Fuel (Kraft), was contracted by plaintiffs to connect the Tank to the House, to fill the Tank with oil, and to make periodic deliveries of fuel when needed.
Defendant/third-party plaintiff Federal Insurance Company *1101 (Federal) is the insurance carrier which issued plaintiffs the homeowners insurance policy in force during the relevant time period.
Plaintiffs assert that in or about December 1989, shortly after installation, the oil Tank began to leak and continued to leak a large volume of oil below ground surface which resulted in, inter alia: the pollution of the well which served the House; the pollution of the surrounding grounds and ruination of the landscaping, bushes, trees and shrubs in the immediate area; the failure of the Dwelling’s heating system which caused the pipes to freeze and burst; and the destruction of furniture and personal effects within the House caused by water from the bursted pipes.
Plaintiff commenced the within action which interposed seven causes of action. The first three causes of action, which are asserted against Winston and which sound in, respectively, breach of warranty and merchantability, breach of contract and negligence, allege that Winston improperly sold plaintiff the Tank, which was only suited for above-ground use, and failed to warn plaintiffs that the Tank had to be fitted with a permanent metal plug prior to installation.
The fourth and fifth causes of action, which are asserted against Bombola and which sound in, respectively, breach of contract and negligence, allege that Bombola improperly set the Tank in the ground, failed to perform certain tests to ascertain that the Tank was in a safe condition; and failed to replace a certain temporary plug with a permanent metal plug.
The sixth and seventh causes of action, which are asserted against Kraft and which sound in, respectively, breach of contract and negligence, allege that Kraft: failed to properly connect the Tank to the Dwelling; failed to conduct the necessary tests to determine that the Tank was operating properly; and ignored the fact that it had to continually fill the Tank over short intervals, pumping approximately 2,000 gallons into it over a relatively short period of time, a clear indication that the Tank was leaking. All of the approximately 2,000 gallons of oil pumped into the Tank allegedly leaked out. Plaintiffs seek $500,000 in damages.
In the instant motion, plaintiffs move for leave to amend the complaint to add an eighth cause of action against defendants Winston, Bombola and Kraft based on Navigation Law § 181 (5). The proposed amended complaint does not impact on *1102 action No. 1 against Federal, and neither Federal nor Kraft oppose the within motion.
Navigation Law § 181 (5) states: "Any claim by any injured person for the costs of cleanup and removal and direct and indirect damages based on the strict liability imposed by this section may be brought directly against the person who has discharged the petroleum, provided, however, that damages recoverable by any injured person in such a direct claim based on the strict liability imposed by this section shall be limited to the damages authorized by this section” (emphasis added).
It is well settled that absent prejudice or surprise, leave to amend a complaint shall be "freely given” (see, CPLR 3025 [b]; Edenwald Contr. Co. v City of New York, 60 NY2d 957; NAB Constr. Corp. v Metropolitan Transp. Auth., 167 AD2d 301; Adams Drug Co. v Knobel, 129 AD2d 401; Fulford v Baker Perkins, 100 AD2d 861; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3025:6, at 356).
Defendants Bombola and Winston, in opposing the instant motion, make no attempt to demonstrate, or allege, any prejudice which might result from the granting of plaintiffs’ requested relief to amend.
Defendants proffer two arguments with regard to Navigation Law § 181 (5): that they were not responsible for the alleged discharge and, therefore, do not fall within the category of people liable under that section; and that section 181 (5), which became effective on July 26, 1991 or approximately five months after the commencement of the within action, is not retroactive in nature, and, as a result, is not applicable to the facts herein.
In Merrill v Ralston (95 AD2d 177) the Appellate Division, First Department, held that: "Whether an amendatory statute is to be given retroactive application depends upon the legislative intent and whether the amendment involves procedural or remedial matters as opposed to substantive rights (* * * Matter of Clayton v Clement, 33 NY2d 386; Simonson v International Bank, 14 NY2d 281).” (Supra, at 179.)
The general rule favored by the courts is that a statute should be construed as prospective unless the language of the statute, either expressly or by direct implication, requires a retroactive construction. An exception to the foregoing is that remedial statutes, which are to be liberally construed, are to be given retroactive construction to the extent that they do not impair vested rights or create new rights (see, McKinney’s *1103 Cons Laws of NY, Book 1, Statutes § 54 [a]; § 321; State of New York v Cities Serv. Co., 180 AD2d 940; Kriegel Assocs. v Lahm Knitting Mill, 179 AD2d 539, lv dismissed 80 NY2d 893; Matter of Hays v Ward, 179 AD2d 427, lv denied 80 NY2d 754; Matter of City of New York [Long Is. Sound Realty Co.], 160 AD2d 696; Lesser v Park 65 Realty Corp., 140 AD2d 169, lv dismissed 72 NY2d 1042; Coffman v Coffman, 60 AD2d 181).
Remedial statutes are designed to correct imperfections in prior law, give relief to aggrieved parties and to promote justice (see, Matter of Asman v Ambach, 64 NY2d 989; Matter of Cady v County of Broome, 87 AD2d 964, lv denied 57 NY2d 602; Coffman v Coffman, supra, at 188; McKinney’s Cons Laws of NY, Book 1, Statutes § 321).
If a new right of action is created which did not previously exist, the statute should be applied prospectively only (Matter of Hays v Ward, supra, at 428-429; Ruotolo v State of New York, 157 AD2d 452, lv denied 75 NY2d 710).
A reading of Navigation Law § 181 clearly reveals that it is remedial in nature and is designated to clarify the fact that a private right of action exists under article 12 of the Navigation Law. A review of the legislative Bill Jacket is also instructive. In a letter to Governor Cuomo, Senator Owen H. Johnson, a cosponsor of the bill, states (Bill Jacket, L 1991, ch 672), inter alia: "This legislation would clarify Article 12 of the Navigation Law by expressly providing a person damaged by a discharge of petroleum with a private right of action against the party responsible for the discharge based on the strict liability imposed by § 181 of the Navigation Law. This right existed for injured parties from 1977, when this statute was originally enacted, until recently when the Appellate Division of the Supreme Court, Third Department, decided Snyder v Jessie [164 AD2d 405, appeal denied 77 NY2d 940] This legislation seeks to restore this right to injured persons that was disturbed by the recent court ruling” (emphasis added).
In a joint memorandum, Senator Johnson and the bill’s cosponsor, Assemblyman William Boyland, state (Bill Jacket, L 1991, ch 672), inter alia:
"The New York State Environmental and Spill Compensation Fund (the Fund) was created pursuant to Article 12 of the Navigation Law * * * The fund pays for the cleanup and removal costs and damages sustained in connection with a petroleum discharge where the discharger is unknown, unable *1104 or unwilling to undertake remediation. Claims for compensation filed against the Fund by persons damaged as the result of a petroleum discharge are also processed by the Fund. The Fund subsequently attempts to collect the costs associated with a cleanup * * *
"The Court’s decision in Snyder v Jessie imposes an unreasonable burden on the Fund. It is clear that the Fund does not possess the financial means to pay all eligible claims brought by persons sustaining loss to real and personal property as a result of spills in New York State. In addition, the Office of the State Comptroller will not be able to effectively process with existing resources the increased number of claims that are expected to be filed with the Fund due to this decision. These problems are likely since the vast majority of claims for damage from spills are presently brought directly against dischargers * * * Accordingly, Article 12 must be clarified to expressly provide for a private right of action [footnote omitted]” (emphasis added).
From the foregoing, this court concludes from both the wording of the statute and the clear expression of legislative intent that section 181 (5) is remedial in nature and is designed to clarify the existence of a right of action which, in fact, previously existed. As a result, section 181 (5) may be retroactively applied.
Defendants next argue that they do not fall within the category of persons who discharged petroleum under the Navigation Law since they were not responsible for the alleged discharge.
The term "discharge” is defined under Navigation Law § 172 (8) as: "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking * * * emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters.”
Under this broad definition, a discharger under the Navigation Law not only includes parties who directly discharge petroleum into State waters but also those parties whose actions or omissions have contributed in causing the discharge.
Defendant Winston, who sold the oil Tank, and defendant Ted Bombola, who excavated the site, and placed and leveled the Tank, would fall within the category of dischargers under the Navigation Law if their actions or omissions are found to *1105 have contributed, in any manner, in causing the discharge (see, Domermuth Petroleum Equip. & Maintenance v Herzog & Hopkins, 111 AD2d 957).
In the absence of any discovery and in view of the conflicting allegations asserted by the parties, it is impossible at this juncture to determine which party or parties might be responsible for the alleged discharge.
Defendants assert that the Mendlers own a general contracting firm and that they supervised all aspects of the purchase and installation of the Tank and that they were responsible for the discharge. Defendants further point out that the New York State Department of Law, by letter dated April 8, 1992, informed Henry Mendler that an investigation had been conducted and that he was responsible for the discharge. Defendants maintain that Henry Mendler, being a discharger, is not permitted to assert a strict liability claim against them under the Navigation Law.
Since Henry Mendler is the owner of the oil Tank which discharged oil into waters of the State, he is a discharger under the Navigation Law. Courts have imposed liability on the owner of a system which has discharged petroleum into State waters regardless of whether the owner caused or contributed to the cause of the discharge. (State of New York v King Serv., 167 AD2d 777; Merrill Transp. Co. v State of New York, 94 AD2d 39.)
While Henry Mendler falls within the category of a discharger he is also a person injured as a result of a discharge of petroleum. Plaintiff being an injured person under Navigation Law § 181 (5) is permitted to bring a claim based on strict liability against any person who discharged the petroleum and caused the injured party damage. Mendler’s status as a dis-charger would not prevent him from seeking recovery under section 181 (5) from other persons or entities which might fall within the definition of discharger (Matter of White v Regan, 171 AD2d 197, lv denied 79 NY2d 754; State of New York v King Serv., supra, at 779).
Accordingly, plaintiffs’ motion to amend their complaint is granted and the complaint is deemed served in the form annexed. Defendants are directed to answer the complaint, within 20 days of the service of a copy of this order with *1106 notice of entry. Defendants are advised that they may interpose a counterclaim against plaintiffs based on common-law negligence for any culpable conduct on the part of plaintiffs which may have caused or contributed to the cause of the discharge.