**19** GIOVANNA LEONE, Respondent, v LEEWOOD SERVICE STATION, INC., et al., Respondents, and GETTY PETROLEUM CORP., Appellant. [624 NYS2d 610] —In an action to recover damages for property damage and personal injuries, the defendant Getty Petroleum Corp. appeals from a judgment of the Supreme Court, Westchester County (Donovan, J.), entered September 24, 1993, which, upon a jury verdict, is in favor of the plaintiff and against it in the principal sum of $310,000 and in favor of the defendants Anthony Nunno and Leewood Service Station dismissing its cross claims against them.

Ordered that the judgment is modified, on the law, by deleting the provision thereof which awarded the plaintiff $25,000 for emotional distress; as so modified, the judgment is affirmed, with one bill of costs to the respondents appearing separately and filing separate briefs.

This action and three related actions *(see, American Motorists Ins. Co. v Getty Petroleum Corp.,* 212 AD2d 653 [decided herewith]; *Vaccaro v Getty Petroleum Corp.,* 212 AD2d 692 [decided herewith]; *Stober v Getty Petroleum Corp.,* 212 AD2d 689 [decided herewith]), which were joined for trial but not consolidated, arose as a result of the contamination of groundwater by gasoline.

The defendant Getty Petroleum Corp. (hereinafter Getty),

was the owner of a gasoline station and equipment located in Eastchester which it leased to the defendant Leewood Service Station, Inc. (hereinafter Leewood). The defendant Anthony Nunno personally guaranteed Leewood's obligations under the lease as well as related equipment-loan and supply agreements.

On or about October 5, 1989, between 50 and 200 gallons, or more, of gasoline leaked from Getty's underground storage tanks, seeped into the water table, and entered the home of the plaintiff, Giovanna Leone (hereinafter Leone), through a sump pit located in her basement. Getty was notified of the leak and it hired the Tyree Organization (hereinafter Tyree) to remediate the conditions at the Leone home. Tyree, however, apparently failed to determine the extent of the underground contamination, which it believed was limited to the Leone property. As a result, the groundwater in the vicinity of the Leone property remained contaminated.

On October 19th and 20th, heavy rains caused the local water table to rise. The residual gasoline contamination created a plume which migrated through the underground water table to the residence of Giovanni DiMarzo, a plaintiff in one of the related actions (see, Vaccaro v Getty Petroleum Corp., supra). On October 20, 1989, the gasoline entered the sump pit in the DiMarzo basement and fumes were ignited when either the sump pump or the oil burner began to operate. DiMarzo's tenant, Elizabeth Nardelli, also a plaintiff in one of the related actions (see, Stober v Getty Petroleum Corp., supra), suffered an angina attack during the resultant fire and spent almost two weeks in the hospital. The American Motorists Insurance Company, a plaintiff in one of the related actions and the subrogee of DiMarzo (see, American Motorists Ins. Co. v Getty Petroleum Corp., supra), paid DiMarzo $50,570.93 for the replacement value of his home, personal belongings, and living expenses, as required by an insurance policy issued to DiMarzo. Prior to trial, Getty assumed all liability for the acts or omissions of Tyree. At the time of trial, the underground water on both the Leone and DiMarzo properties remained contaminated with high levels of gasoline by-products, i.e., benzene, toluene, ethylbenzene, and xylene, often referred to as "BTEX".

Contrary to Getty's claims, the Supreme Court properly submitted to the jury the private causes of action for strict liability for a petroleum discharge based upon Navigation Law § 181 (5). While the leak and contamination originally occurred in October 1989 and Navigation Law § 181 (5) did not

become effective until July 26, 1991, the Supreme Court properly applied the statute retroactively since the enactment was remedial in nature and simply expanded the common-law right to recover damages which previously existed in favor of any party injured as a result of an oil discharge *(see, Snyder v Newcomb Oil Co.,* 194 AD2d 53, 59; *Wheeler v National School Bus Serv.,* 193 AD2d 998; *Nicol v Jenkins Fire Co.,* 192 AD2d 164; *Town of Guilderland v Texaco Ref. & Mktg.,* 159 AD2d 829, 830; *Domermuth Petroleum Equip. & Maintenance Corp. v Herzog & Hopkins,* 111 AD2d 957; *Mendler v Federal Ins. Co.,* 159 Misc 2d 1099; *see also, Matter of City of New York [Long Is. Sound Realty Co.],* 160 AD2d 696). Getty was liable under the Navigation Law as the owner of the underground tanks *(see, 145 Kisco Ave. Corp. v Dufner Enters.,* 198 AD2d 482). It was also proper for the court to decline to charge the jury that the defendant Anthony Nunno was the operator of the gasoline station. Since Leewood assumed all obligations under the lease, Leewood, rather than Nunno, was the "operator" within the meaning of the Navigation Law *(see,* Navigation Law § 172 [13], [14]; *Matter of White v Regan,* 171 AD2d 197, 198; *State of New York v Wisser Co.,* 170 AD2d 918; *State of New York v King Serv.,* 167 AD2d 777).

In addition, the Supreme Court correctly submitted the negligence causes of action to the jury. The evidence revealed that Getty, which retained ownership of the tanks, which were equipped with an electronic leak-detection system, breached a duty to periodically test the tanks and piping for tightness and to maintain the leak-detection system *(see,* 6 NYCRR 613.5; Town of Eastchester Fire Code § 33.2; *see also, Ferrer v Harris,* 55 NY2d 285, 293; *Smulczeski v City Ctr. of Music & Drama,* 3 NY2d 498). Moreover, while Leewood assumed obligations with respect to the maintenance of portions of the station and certain equipment, Getty's retention of ownership of the underground tanks was sufficient for the imposition of a duty to use reasonable care to maintain the underground tanks in a reasonably safe condition *(see, Klepper v Seymour House Corp.,* 246 NY 85, 92-94; *Edwards v Getty Petroleum Corp.,* 172 AD2d 715). Furthermore, we reject Getty's argument that the consequences of its actions or inactions were not foreseeable *(see, Domermuth Petroleum Equip. & Maintenance Corp. v Herzog & Hopkins, supra,* 111 AD2d, at 958, quoting *Merrill Transp. Co. v State of New York,* 94 AD2d 39, 42-43).

While we agree that there was insufficient evidence to demonstrate that Getty willfully caused the contamination of

the plaintiff's property so as to justify the jury's finding of a private trespass (see, Phillips v Sun Oil Co., 307 NY 328, 331; Kulpa v Stewart's Ice Cream, 144 AD2d 205; Chartrand v State of New York, 46 AD2d 942), we find that the judgment is not infirm in light of the special verdicts which were amply supported by evidence that Getty created a nuisance, was negligent, and was liable under the Navigation Law (compare, Davis v Caldwell, 54 NY2d 176, 182-183; Duffey v Fear, 121 AD2d 928, 931).

Although the Supreme Court erred in submitting to the jury the issue of whether the indemnification agreements were valid under General Obligations Law § 5-321, we affirm its post-verdict ruling which determined, as a matter of law, that the indemnification provisions violated General Obligations Law § 5-321. The agreements failed to allocate the risk of loss to third parties for the parties' mutual benefit (see, Hogeland v Sibley, Lindsay & Curr Co., 42 NY2d 153, 158-160; Jensen v Chevron Corp., 160 AD2d 767; Graphic Arts Supply v Raynor, 91 AD2d 827). Moreover, since the jury found that Leewood was not negligent, the agreements operated to shift Getty's sole negligence to Leewood in contravention of General Obligations Law § 5-321 (see, Lopez v Consolidated Edison Co., 40 NY2d 605, 609-610). As a result, the Supreme Court properly dismissed Getty's cross claims against Nunno and Leewood.

There is merit to Getty's contention that the evidence was insufficient to support the jury's award of $25,000 to Leone for her emotional distress. Leone, who was awarded $235,000 representing the diminution of the value of her home, plus $50,000 for the loss of enjoyment of her land, presented no medical evidence to substantiate her general claims of emotional distress. While Leone was understandably upset over the contamination of her home, under the circumstances of this case, and in light of the limited circumstances under which purely psychic injuries are compensable (see, Lancellotti v Howard, 155 AD2d 588; see also, Conway v Brooklyn Union Gas Co., 189 AD2d 851), we are not persuaded that she was entitled to compensation for her emotional distress as a separate element of damages.

We have examined all of Getty's remaining claims and find them to be without merit. Miller, J. P., O'Brien, Joy and Krausman, JJ., concur.