RICHARD L. HOLMES, Retired Appellate Judge.
The Medical Clinic Board of the City of Birmingham (Board) appeals from the circuit court’s order that affirmed the decision of the Alabama Environmental Management Commission (Commission).
Our review of the record reveals the following pertinent facts: In 1989, when the Board was in the process of constructing the Kirklin Clinic in downtown Birmingham, it discovered several underground storage tanks (UST) beneath the surface of the property on which the Kirklin Clinic was being constructed. The Board notified the Alabama Department of Environmental Management (ADEM) and expended the sum of $532,838.56 to clean up the site, which had been contaminated by the release of petroleum products from the UST discovered on the site.
In January 1991, after completion of the cleanup, the Board filed a request with ADEM for reimbursement of the costs of the investigative and remediation work on the site. This request was filed pursuant to Ala.Code 1975, §§ 22-35-1 through -13 (Alabama Underground Storage Tank Trust Fund Act (AUST Trust Fund Act)).
In November 1992 ADEM denied the Board’s request for reimbursement from the AUST Trust Fund because ADEM determined that the costs expended for the remediation of the site “[were] not eligible for coverage by the AUST Trust Fund because, among other reasons, the [UST] were not registered nor were UST fees paid at the time of discovery of the release, as required by ADEM Admin.Code R. 335-6-16-.05(l).”
The Board requested a hearing before the Commission to review ADEM’s denial of the Board’s request for reimbursement from the AUST Trust Fund. The Commission appointed a hearing officer, and the parties agreed to submit this matter to the hearing officer on stipulated facts.
Additionally, the parties agreed that the primary issue was whether the Board was eligible for AUST Trust Fund benefits and that the secondary issue, concerning the reasonableness of the claimed costs, would be addressed only if the hearing officer determined that the Board was eligible for benefits. The hearing officer’s recommendations, with supporting findings of fact and conclusions of law, stated, as follows, in pertinent part, “[t]he primary issue at bar therefore turns upon the stipulation found in the ... prehearing order whereby ‘the parties hereby stipulate and agree that the subject USTs were not registered nor were UST fees paid at the time of discovery of the release.’”
The hearing officer recommended that the Commission affirm ADEM’s denial of the Board’s request for AUST Trust Fund benefits. The Commission adopted the hearing officer’s recommendations in January 1994.
In February 1994 the Board filed with the circuit court an appeal and a petition for judicial review, pursuant to Ala.Code 1975, § 22-22A-7. In May 1995 the circuit court issued a 21-page order, affirming the Commission’s decision. The trial court’s order stated the following, in pertinent part:
“Under AUST, the owner must be in substantial compliance with the provisions of the Act, i.e., the owner must have registered the tank with ADEM; he must have made a good faith effort to comply with state and federal laws applicable to USTs and rules and regulations governing them; and [he] must have met financial responsibility requirements imposed by [Ala.Code 1975,] § 22-35-7....
“Under § 22-35-4(1), Ala.Code 1975, if the owner is in substantial compliance, ADEM is required to obligate monies available in the fund for investigative and corrective work....
“Under [Ala.Code 1975,] § 22-35-5, every owner of a UST was required to pay an annual UST Trust Fund fee....
[[Image here]]
“Under the original [Ala.Code 1975,] § 22-35-4(2), the owner must have been in substantial compliance on the date of discharge of the motor fuels. The original provision would have excluded from cover *1144 age under the Fund all USTs which had leaked before being registered. The 1993 amendment changed § 22-35-4(2) so as to provide that the owner must be in substantial compliance on the date of discovery of the release of motor fuels which necessitates the cleanup.
“This Court concludes that the Alabama Legislature must have intended to apply the new provisions retroactively to provide coverage for releases not discovered at the time of registration. Applying the new § 22-35-4(2) retroactively, the Board would have had coverage and [would] have been entitled to benefits from the Trust Fund if it had registered the USTs before discovering the leakage or release. Unfortunately for the Board, it had already discovered the release of leakage before registering the USTs and paying the annual AUST Trust Fund fees.
[[Image here]]
“... [T]he Alabama statute in [Ala.Code 1975,] § 22-35-3(14) [§ 22-35-3(15) after the 1993 amendment] expressly defines the term ‘substantial compliance’ as including the registration of the tank and the timely payment of the annual tank fee. In § 22-35-4(2), the Alabama act provides that the owner of the [UST] shall be liable to [ADEM] for the cleanup cost if the owner or operator was not in substantial compliance ‘on the date of discovery of the release of motor fuels’
[[Image here]]
“Counsel for the Board also refers to the fact, which is undisputed, that the Board had never operated the USTs located on its property. It found itself in a position of responsibility for the same only because of its status as the owner of the real property upon which the tanks were located. It is not disputed that upon learning of the presence of the tanks, the Board complied with the regulations involving the cleanup of the contamination to the satisfaction of ADEM.
“The Board fails to state what precautions were taken prior to the acquisition of the real property involved in this case in order to make sure that the'Board would not, by acquiring the real property, thereby become responsible for pollution or contamination for USTs located on the subject property.”
(Emphasis in original.)
The Board filed a post-judgment motion, pursuant to Rule 59, Ala.R.Civ.P., which was denied in an eight-page order.
The Board appeals.
On appeal the Board contends that the trial court committed reversible error when it affirmed ADEM’s denial of the Board’s request for reimbursement from the AUST Trust Fund.
The Board maintains that the AUST Trust Fund was created by the Alabama legislature to reimburse property owners for the cost expended to clean up contaminated property and groundwater and that such reimbursement was an incentive to property owners and prospective purchasers of the property to clean up the contamination in a timely manner.
The Board argues that for ADEM to deny its request for reimbursement on the grounds that the Board did not meet the eligibility requirements when one of the requirements was literally impossible for the Board to comply with — to register the tanks prior to discovery of a release — would circumvent the express intent and spirit of the AUST Trust Fund Act. The Board further argues that, in light of the facts of this particular case, it was in “substantial compliance” with the requirements of the AUST Trust Fund Act. The Board bases its argument on the grounds that the only alleged “noncomplianee” by the Board was that the tanks were not registered at the time the release was discovered — a situation wholly beyond the control of the Board. The Board further maintains that ADEM’s denial of the Board’s request for reimbursement exceeded ADEM’s authority and was contrary to the intent of the Alabama legislature when it passed the AUST Trust Fund Act.
We would note that Ala.Code 1975, § 22-35-3(15), of the AUST Trust Fund Act defines “substantial compliance” in the following manner:
*1145 “An owner or operator of an underground or aboveground storage tank has registered that tank with the department, has timely paid the annual fee, if any, has made a good faith effort to comply with the state and federal laws applicable to underground or aboveground storage tanks, and the rules and regulations adopted pursuant thereto, and shall have met the financial responsibility requirements imposed by Section 22-35-7, and shall have promptly notified the director of any third party claim or suit made against him.”
As previously noted, § 22-35-4(1) states that ADEM is to obligate monies available in the AUST Trust Fund for investigation and cleanup of the contamination only if the owner of the UST is found to be in substantial compliance.
We find that, as expressly provided by the AUST Trust Fund Act, to be eligible for reimbursement under the AUST Trust Fund Act, an owner must have registered his tank with ADEM prior to the discovery of the release. As the circuit court stated in its order denying the Board’s post-judgment motion:
“In answer to the Board’s argument that it was without fault [and that its failure to register the tanks prior to the discovery of the release was wholly beyond its control because it was unaware of the existence of such tanks], this court concluded that the Board could have made an investigation of the underground condition of the real property purchased by it prior to such purchase.”
In light of the above, the judgment of the circuit court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED.
ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur.