IOWA COMPREHENSIVE PETROLE-
UM UNDERGROUND STORAGE
TANK FUND BOARD, Appellant,

v.

SHELL OIL COMPANY, Appellee.

No. 99-1251.

Supreme Court of Iowa.

Feb. 16, 2000.

Thomas J. Miller, Attorney General, David R. Sheridan and David S. Steward, Assistant Attorneys General, and John R. Perkins of Pingel & Templer, P.C., West Des Moines, for appellant.

D. Patterson Gloor and Jennifer A. Keller of Cassiday, Schade & Gloor, Chicago, Illinois, Roger L. Lande and David Meloy of Stanley, Lande & Hunter, Muscatine, and Timothy J. Walker and Gary A. Norton of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., CARTER, NEUMAN, and CADY, JJ., and HARRIS,* S.J.

CADY, Justice.

This appeal and cross-appeal concern the responsibility of a petroleum refiner and supplier under the Iowa Comprehensive Petroleum Underground Storage Tank Fund Act, Iowa Code chapter 455G (1997) (Tank Fund Act) for the clean up costs of petroleum released into the ground from an underground storage tank.

## I. Background Facts and Proceedings.

Shell Oil Company began operating a gas station in DeWitt, Iowa in 1955. The station was located on a corner lot leased by Shell. The station sold gasoline and

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

petroleum products under the Shell trademark. The gasoline was stored on the property in an underground storage tank, and dispensed by pumps to customers.

Shell entered into a sublease with an individual in 1962 to operate the Shell station. Shell continued to supply gasoline to the station, and placed it into the underground storage tank for sale by the sublessee. Shell replaced the tank in 1963 or 1964 after water was detected in the tank.

Shell assigned its lease to Jones County Oil Company in 1973, and the sublessee continued to operate the station under the Shell trademark. The station maintained the Shell trademark, and continued to sell Shell gasoline and products.

Jones County Oil Company was an independent distributor of Shell gasoline. As a Shell distributor or "jobber," Jones County Oil Company purchased gasoline exclusively from Shell and sold it to various Shell stations, including the Shell station in DeWitt.

Shortly after Shell assigned the lease to Jones County Oil Company, water was again discovered in the underground tank. After consulting with Shell, the tank was relined.

Jones County Oil Company purchased the station in 1981, and it continued to be operated under the Shell trademark. The property was purchased by an individual in 1983 after Jones County Oil Company suffered financial problems.

Casey's General Store purchased the land in 1985. It razed the station building and removed the underground storage tank to rebuild a convenience store and gasoline station to meet its distinctive design and needs. When the underground storage tank system was removed, gasoline was observed in the underground pit and a strong odor of petroleum was detected in the soil. The odor became stronger as the new pit was dug deeper.

Casey's reported the contamination to the Iowa Department of Natural Resources, and applied to the Iowa Comprehensive Petroleum Underground Storage Tank Fund Board for benefits under the Tank Fund Act. The Board approved Casey's claim. A total of $27,335.09 was paid in corrective action costs.

The Board brought this action against Shell under the Tank Fund Act to recover the costs of the corrective action. It claimed Shell was an "operator" of the underground storage tank system until 1985 and was liable for the petroleum contamination discovered by Casey's.

At trial, the district court instructed the jury on the elements of recovery. It instructed the jury that an "operator" was a person or entity "in control of, or having responsibility for, the daily operation of the underground storage tank system." The district court also instructed the jury that the Board was required to prove that the petroleum release was a proximate cause of the corrective action costs. The jury was further instructed the Board was required to prove the reasonableness of its corrective action costs.

The jury found Shell was an operator from 1962 to 1973, but determined it did not operate the site after it assigned the lease to the Shell distributor in 1973. The jury awarded the Board the full past corrective action costs of $27,355.09, and $1000 for future corrective action costs. The Board had sought $190,000 for future corrective action costs from Shell. The trial court denied Shell's motion for judgment notwithstanding the verdict.

The Board appealed and Shell cross-appealed. The Board claims the district court erred in instructing the jury on the definition of an operator. It also claims the court erred by including proximate causation as an element of recovery and in requiring the Board to prove the reasonableness of the corrective costs. On cross-appeal, Shell claims that its involvement at the site did not fall within the scope of the Tank Fund Act, and that the Tank Fund Act does not apply retroactively.

## II. Scope of Review.

We review a challenge to jury instructions for errors of law. Iowa R.App. P. 4; *Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602, 604 (Iowa 1998). Error in giving or refusing jury instructions, without prejudice to the complaining party, does not merit reversal. *Thavenet v. Davis*, 589 N.W.2d 233, 236 (Iowa 1999).

We review the district court's ruling on the motion for judgment notwithstanding the verdict on error. Iowa R.App. P. 4; *Roling v. Daily*, 596 N.W.2d 72, 74 (Iowa 1999). We question whether the evidence, when viewed in the light most favorable to the non-moving party, was sufficient to generate a question for the jury. *Id.*

## III. Background of Tank Fund Act.

We have considered the background of the Tank Fund Act in other cases. *See Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp.*, 606 N.W.2d 359 (Iowa 2000) *(Mobil I); Hagen v. Texaco Ref. & Mktg., Inc.*, 526 N.W.2d 531, 535 (Iowa 1995). In particular, the Tank Fund Act established the Iowa Comprehensive Petroleum Underground Tank Storage Fund which is administered by the Board. Iowa Code §§ 455G.3, .4. This fund assists owners and operators of underground storage tanks in complying with federal technical and financial responsibility regulations, and helps protect and improve the quality of Iowa's environment. *Id.* § 455G.3(2); *see* 1989 Iowa Acts ch. 131, § 2. One method by which the fund assists owners and operators and protects the environment is to help finance corrective actions once the petroleum release is discovered. *Id.* § 455G.9. The Board is empowered to recover funds spent on corrective action. In general, the Board recovers the costs of the corrective action from the "owner, operator, or other potentially responsible party." *Id.* § 455G.13(1).

## IV. Jury Instructions.

### A. Operator and Proximate Cause.

 The Board first claims the definition of an "operator" under the Tank Fund Act should not only include those having "control of" or "responsibility for" the underground storage tank, but the ability to control the underground storage tank. Thus, it claims Shell remained an "operator" of the underground storage tank after it assigned its lease in 1973 because it retained the ability to control the operation of the underground storage tank by refusing to sell Shell gasoline to the Shell jobber for distribution to the dealer, and retained the right to debrand the station. The Board further claims proximate causation is not required in an action against an owner or operator.

We have recently addressed both issues in *Iowa Comprehensive Petroleum Underground Storage Tank Fund Board v. Mobil Oil Corp.*, 606 N.W.2d 359 (Iowa 2000) *(Mobil I )* (defining "operator"), and *Iowa Comprehensive Petroleum Underground Storage Tank Fund Board v. Shell Oil Co.*, 606 N.W.2d 376 (Iowa 2000) *(Shell II )* (imposing proximate cause requirement). Based on the same reasoning set forth in those opinions, we conclude the district court did not err in instructing the jury on the definition of an operator or in imposing a proximate cause requirement.

### B. Proof of Reasonableness of Costs.

The district court instructed the jury that the Board was required to prove the reasonableness of the corrective action costs. The Board alleges that a presumption of reasonableness should attach to any corrective action expenditures under the Tank Fund Act and Shell should have the burden to prove any expenditures or estimates were unreasonable, arbitrary, or capricious.

 The Board correctly points out that it is required to determine the reasonableness of the corrective action costs before making payment. *See* Iowa Code

§ 455G.12(a). Additionally, all contracts to clean up petroleum releases are subject to public bidding requirements. *See id.* §§ 455G.4(4), .5. This helps ensure that those required to pay for the work are given the best possible performance at the lowest price. *See Weiss v. Incorporated Town of Woodbine*, 228 Iowa 1, 11, 289 N.W. 469, 474 (1940) ("competitive bidding is required to obtain contracts at the most reasonable, economical and practical cost in having the work economically done"). Furthermore, there is a recognized presumption, absent evidence to the contrary, that public officials will carry out their duties in a prudent, proper manner. *See Janson v. Fulton*, 162 N.W.2d 438, 442 (Iowa 1968).

■■■ Nevertheless, we do not believe the Board's obligation to enter into fair and equitable contracts at usual and customary rates necessarily impacts the burden of proof in a subsequent action by the Board to recover costs from a responsible party. It is fundamental to our legal system that the burden of proof in an action ordinarily rests with the party who is seeking recovery. *Verschoor v. Miller*, 259 Iowa 170, 175, 143 N.W.2d 385, 388 (1966); *see also* Iowa R.App. P. 14(f)(5). This principle is consistent with the notion that the burden should normally rest with the party who has the greater access to the proof. *See In re Mt. Pleasant Bank & Trust Co.*, 455 N.W.2d 680, 685 (Iowa 1990); *Haynes v. Dairyland Mut. Ins. Co.*, 199 N.W.2d 83, 85 (Iowa 1972). In this case, the Board requested recovery of costs, and acknowledged recovery under the Tank Fund Act was limited to reasonable and necessary costs. It has the greater access to the information to show those steps taken to ensure the reasonableness of the corrective action costs. Thus, we believe the Board has the burden to establish the reasonableness of the costs, and the accompanying presumptions are available to the Board as an aid in meeting this burden. The presumptions, however, do not eliminate or shift the burden of proof.

## V. Shell's Cross–Appeal.

On cross-appeal Shell claims the Tank Fund Act applies only to "owners" or "operators" of underground storage tanks who are subject to the proof of financial responsibility requirements under the Tank Fund Act, and it was never subject to such requirements.[1] It also claims the Tank Fund Act cannot apply retroactively. Thus, Shell claims it was entitled to judgment as a matter of law.

### A. Scope of Tank Fund Act.

The Tank Fund Act does not apply to all underground storage tanks. *See* Iowa Code § 455G.1(2)(a), (b), (c). Instead, it "applies to petroleum underground storage tanks for which an owner or operator is required to maintain proof of financial responsibility under federal or state law...." *Id.* § 455G.1(2); *see also id.* §§ 455G.1(2)(b), .2(19). Federal law first required proof of financial responsibility in 1988, and our state law first required proof of financial responsibility in 1989. *See* 53 Fed.Reg. 43322, 43370–72 (Oct. 26, 1988) (codified at 40 C.F.R. §§ 280.90–.93 (1999)); Iowa Admin. Code r. 567—136.2 (1989).

■■■ Even though the particular underground tank at issue in this case was in operation prior to the requirement that the owner or operator maintain responsibility,

---

1. Section 455G.1(2) provides:

 This chapter applies to petroleum underground storage tanks for which an owner or operator is required to maintain proof of financial responsibility under federal or state law, from the effective date of the regulation of the federal environmental protection agency governing that tank, and not from the effective compliance date, unless the effective compliance date of the regulation is the effective date of the regulation. An owner or operator of a petroleum underground storage tank required by federal or state law to maintain proof of financial responsibility for that underground storage tank is subject to this chapter and chapter 424.

that fact does not exclude the tank from the Tank Fund Act. The Tank Fund Act describes the tanks within its scope as those which require the owner or operator to maintain proof of financial responsibility. *See* Iowa Code § 455G.1(2). The effective date of the proof of responsibility requirements do not exclude tanks which predate the requirements, but simply designate those tanks subject to the Tank Fund Act whether they existed before or after the requirement. If the tank, regardless of when it was placed in the ground, is a type for which the owner or operator is required to maintain proof of responsibility, it is covered under the Tank Fund Act.

### B. Retroactive Application.

■ Absent an expressed indication to the contrary, statutes are generally presumed to apply prospectively. Iowa Code § 4.5. However, this statutory rule was not intended to apply to remedial or procedural statutes. *State ex rel. Buechler v. Vinsand,* 318 N.W.2d 208, 210 (Iowa 1982). We recognize remedial and procedural statutes are exceptions to section 4.5, and may be applied retroactively. *Schuler v. Rodberg,* 516 N.W.2d 902, 904 (Iowa 1994).

Shell argues chapter 455G is substantive and should be construed prospectively because it creates and regulates new rights, obligations, and duties. *See Walker State Bank v. Chipokas,* 228 N.W.2d 49, 51 (Iowa 1975). The Board asserts this is a remedial statute and susceptible to retroactive application consistent with the legislature's intent. We have previously found legislation which regulates conduct for the public good is remedial. *See McCracken v. Iowa Dep't of Human Serv.,* 595 N.W.2d 779, 784 (Iowa 1999); *Hornby v. State,* 559 N.W.2d 23, 25 (Iowa 1997).

■ A remedial statute is not always applied retroactively. *See Iowa Dep't of Transp. v. Iowa Dist. Ct.,* 587 N.W.2d 781, 789 (Iowa 1998). Instead, we follow a three-part test to determine whether the legislature intended retrospective or pro-

spective application. *Emmet County State Bank v. Reutter,* 439 N.W.2d 651, 654 (Iowa 1989).

First, we look to the language of the new legislation; second, we consider the evil to be remedied; and third, we consider whether there was any previously existing statute governing or limiting the mischief which the new legislation was intended to remedy.

*Emmet County State Bank,* 439 N.W.2d at 654 (citations omitted); *see also State ex rel. Turner v. Limbrecht,* 246 N.W.2d 330, 333 (Iowa 1976) (applying same rule), *overruled on other grounds by, State ex rel. Miller v. Hydro Mag, Ltd.,* 436 N.W.2d 617, 622 (Iowa 1989).

■ In applying the first part of this test, the language of the Tank Fund Act, especially legislative findings and legislative intent, clearly indicates retroactive application. Specific legislative findings include:

1. Maintenance of Iowa's petroleum distribution network, particularly in rural Iowa, is dependent upon the provision of moneys *to clean up existing petroleum releases* and the availability [of funds] ... for petroleum underground storage tank improvements....

 . . . .

3. It is necessary to provide a reasonable means to share the cost of *clean up of past and existing petroleum* leaks to make [Iowa's underground storage tanks] insurable and environmentally safe, and to protect groundwater safety....

1989 Iowa Acts ch. 131, § 1(1), (3) (emphasis added). Additionally, the legislative intent was to protect and improve the environment by correcting existing petroleum releases. *Id.* § 2. The fund was established as an interim measure to address short-term unavailability of funds for these clean up measures of past releases. *Id.* The goal was to phase out the fund as assurance mechanisms were established within the private market. *Id.* We believe

this approach clearly revealed an intent for the act to apply retroactively.

Secondly, the legislative findings clearly indicate a purpose of the Tank Fund Act was to establish mechanisms, financial and regulatory, to handle the environmental issues created by existing petroleum leaks, as well as implement means to prevent future leaks. The environmental damage was the "evil to be remedied," and financial support for clean up was the means to accomplish that end.

Finally, prior to the Tank Fund Act, Iowa had no comprehensive statutory scheme for petroleum contamination. Thus, the retroactive reach of the Tank Fund Act was not previously governed by a prior statute.

The Tank Fund Act fits squarely within the *Emmet County State Bank* test for retroactivity. It also fits into the types of situations in which we have found a statute to be retroactive. *See Board of Trustees of Mun. Fire & Police Retirement Sys. v. City of West Des Moines,* 587 N.W.2d 227, 230 & n. 4 (Iowa 1998) (remedial, curative, or emergency legislation given retroactive application).

We also recognize other jurisdictions have applied their underground storage tank statutes retroactively. *See Medical Clinic Bd. v. Alabama Dep't of Envtl. Mgmt.,* 679 So.2d 1142, 1144 (Ala.Civ.App. 1996); *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 977 (Ind.1998); *State ex rel. Dep't of Envtl. Protection v. Arky's Auto Sales,* 224 N.J.Super. 200, 539 A.2d 1280, 1283 (App.Div.1988); *Leone v. Leewood Serv. Station, Inc.,* 212 A.D.2d 669, 624 N.Y.S.2d 610, 612 (1995); *Weston v. Northwest Pump & Equip. Co.,* 150 Or.App. 562, 946 P.2d 691, 696 (1997); *Dash Point Village Assocs. v. Exxon Corp.,* 86 Wash.App. 596, 937 P.2d 1148, 1152 (1997). Those jurisdictions which have declined to apply their statutes retroactively have failed to find clear legislative intent to do so. These states apply their Tank Fund Acts prospectively by relying upon either express prospective language, or particular statuto-ry language which evidences a complete lack of retroactive intent. *See Wilson v. Triangle Oil Co.,* 566 A.2d 1016, 1019 (Del.Super.Ct.1989) (lack of retroactive language, thus no clear legislative intent); *Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Board,* 975 S.W.2d 303, 304 (Tenn.1998) (language specifically negated retroactive application).

We find our Tank Fund Act was designed to address past and future petroleum leaks, and that our legislature intended its retroactive application. Our legislature made specific findings of an existing problem and made repeated reference to the need to address past contamination. We affirm the district court's denial of Shell's motion for judgment notwithstanding the verdict.

## VI. Conclusion.

We find the district court's instructions to the jury were accurate statements of the law. They did not prejudice the Board's efforts to recover its corrective action costs. Additionally, the district court correctly found the Tank Fund Act was retroactive. We affirm the district court.

**AFFIRMED.**