WIGGINS, Justice
(concurring in part and dissenting in part).
I respectfully concur in part and dissent in part.
When we decide whether to award spousal support and its duration, the first step is to determine which party has the burden of proof to show he or she is entitled to alimony and its duration. We said long ago, the person seeking spousal support has the burden to show he or she is entitled to spousal support. Moore v. Moore, 192 Iowa 394, 395-96, 184 N.W. 732, 732.(1921).
In 1921, when we made this statement, the Code required a party to verify the petition for dissolution and establish the allegations in the petition by competent evidence. Iowa Code § 6622 (1919). In this regard, the Code has not changed. A party must still verify the petition for dissolution and establish the allegations in the petition by competent evidence. Iowa Code § 598.5(2) — (3) (2011).[3]
Moreover, putting the burden of proof on the party requesting spousal support is consistent with the general legal principle that the “burden of proof in an action ordinarily rests with the party who is seeking recovery.” Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co., 606 N.W.2d 370, 374 (Iowa 2000). In the present case, Linda requested spousal support in her answer to Steve’s petition for dissolution. Accordingly,' Linda bears the burden of proof to establish from the competent evidence produced at trial that she is entitled to spousal support, and if she is entitled to spousal support, its amount and duration.
In proving her claim for spousal support and its duration, it is important to note the legal principles associated with her burden of proof. The legislature has set forth the *419 criteria a court should use to determine spousal support awards. These are:
a. The length of the marriage.
b. The age and physical and emotional health of the parties.
c. The distribution of property made pursuant to section 598.21.
d. The educational level of each party at the time of marriage and at the time the action is commenced.
e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
g. The tax consequences to each party.
h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
i. The provisions of an antenuptial agreement.
j. Other factors the court may determine to be relevant in an individual case.
Iowa Code § 598.21A(1).
I agree with the district court that Linda is entitled to spousal support. I also agree the amount of the support should be $1400 per month while Steve is paying child support, and then increase to $2000 after child support terminates. I reach this conclusion for a number of reasons.
First, at the time of the decree, Linda’s earning capacity was around $22,500 per year compared to Steve’s actual earnings of $92,000 per year. Second, at Steve’s and Linda’s present ages, there is not much either party can do to increase his or her earning capacity. Finally, this award will allow both parties to live at a standard of living reasonably comparable to what they enjoyed during the marriage.
I cannot agree, however, with the spousal support award continuing beyond when Steve reaches age sixty-six[4] or retires, whichever is later. The record is void of any evidence and Linda has failed to meet her burden to show Steve will have the income or the assets to support such an award after his retirement. If we look at the assets awarded Steve, he netted $64,249 worth of assets while Linda netted $81,651 worth of assets. We can calculate the net asset value awarded to Steve by taking the district court’s award of gross assets in the amount of $167,125 and subtracting the court awarded liabilities of $102,876 from the gross assets. Linda leaves this marriage with no liabilities.
In analyzing the assets the court awarded Steve, we can break those down into four types. They are as follows:
[[Image here]]
The liabilities Steve received are in the form of his truck loan, credit card expenses, and back taxes. He must pay *420 these debts in the near future. To do so would require him to liquidate his retirement funds and the cash value of his life insurance. The liquidation of these funds has tax consequences, which we must also consider. Hence, after paying these debts, he would be left with little or no assets to generate any income after his retirement. Thus, I would find that once his income stops after his retirement his main income would be his social security, which is not sufficient to support a $2000 per month payment. Therefore, I would conclude Linda did not prove Steve would have the income to support the spousal support payments ordered by the court after his retirement.
Had these parties remained married beyond Steve’s retirement, it is apparent to me they would not have much more than their social security, IPERS, and any retirement benefits- left after paying their debts. This is the lifestyle Linda would have had after retirement. Under the property settlement in the decree, Linda will have available to her $56,738 in IRAs, a social security benefit based upon Steve’s earnings,[5] and her IPERS. She will also have her earnings until she retires. I find these amounts would be equal to, if not greater than, the amounts she would have available to her if she and Steve had remained married. Lifetime spousal support puts her in a much better situation than she would have been if she had stayed married.
I also think the majority’s reliance on the notion of traditional alimony is misplaced. We first referenced the notion of traditional alimony in 1989. In re Marriage of Francis, 442 N.W.2d 59, 63 (Iowa 1989). We said traditional alimony is “payable for life or so long as a spouse is incapable of self-support, a change in status (e.g., remarriage) may alter the support picture and warrant a modification.” Id. at 64. At the same time, we introduced the terms of reimbursement alimony and rehabilitative alimony. Id. at 63-64. These classifications served us well in 1989, but should not totally drive our decisions on spousal support awards twenty-five years later. As we said in a recent case, it is not necessary for the court to characterize alimony as traditional, reimbursement, or rehabilitative. In re Marriage of Becker, 756 N.W.2d 822, 827 (Iowa 2008). What the legislature requires us to do is to apply the factors set forth in Iowa Code section 598.21A to determine a fair and equitable spousal support. For all the reasons stated above, applying the principle contained in section 598.21A, spousal support should not continue after Steve reaches sixty-six years of age or retires, whichever occurs later.
Contrary to the majority’s position, I do not think Steve would be able to modify the spousal support payments upon his retirement. Our law is clear and well settled — you can only modify a decree if there is a substantial change in circumstances not contemplated by the court at the time of the entry of the decree. In re Marriage of Sisson, 843 N.W.2d 866, 870-71 (Iowa 2014).
At the time of the entry of this decree, the court contemplated Steve would retire at some time in the future. It also contemplated his only retirement income would be from his social security and any retirement accounts he had after paying off the liabilities the court assigned to him. As I previously stated, this would not be enough to pay the $2000 a month spousal support. Therefore, when he comes back to court after his retirement and asks for a *421 modification on the basis his income will not justify the spousal support, the court should deny the modification because the court contemplated his earning situation at retirement when it entered the original decree. The more logical and equitable approach is to terminate Steve’s spousal support obligation when he reaches age sixty-six or retires, whichever is later. At that time, if his financial situation has improved beyond the contemplation of the court at the time it entered the original decree, Linda can file for a modification to have the support continued.
Finally, I think the majority’s reliance on In re Marriage of Michael is misplaced. 839 N.W.2d 680 (Iowa 2013). Michael supports my view that Steve’s spousal support obligation should cease when he reaches age sixty-six or retires, whichever is later. Michael is a modification action, modifying a decree the court previously modified. Id. at 631-33. Both modifications required the husband to file appeals.[6] Id. Each modification was necessary because the court in the original decree awarded lifetime spousal support without knowing what the future held for these litigants. Modification actions are not only very expensive to the litigants, but also use valuable judicial resources.
In Michael we lowered the amount of spousal support, but did not end it on his retirement. Id. at 638-39. We did this because the original decree and the first modification had a provision for lifetime spousal support. Id. at 632, 639. Moreover, the husband in Michael did not- appeal the original award of lifetime spousal support. Obviously, the husband in Michael did not contest the fact that the facts and circumstances in existence at the time the original decree was entered supported lifetime spousal support. In contrast, Steve is appealing the original decree awarding lifetime spousal support.
We can avoid the lessons of Michael by basing the duration of spousal support on the proof presented at trial. Linda has not met her burden of proof to allow the court to award lifetime spousal support. Linda has not proved Steve has the ability to pay lifetime spousal support and that her standard of living will be significantly worse off than if the parties had stayed married and Steve retired. In other words, the legislative mandates of section 598.21A(1) do not allow the district court to award lifetime spousal support.
For these reasons, I must dissent to that part of the majority’s opinion requiring Steve to pay spousal support after he reaches age sixty-six or retires, whichever is later.
WATERMAN and MANSFIELD, JJ„ join this concurrence in part and dissent in part.

. All references to the Iowa Code are to the 2011 Code unless otherwise noted.

. At age sixty-six and two months, Steve is entitled to his full benefits under Social Security.

. A divorced spouse whose marriage lasted ten years or longer can receive benefits based upon their ex-spouse’s earning record. 42 U.S.C. §§ 402(b), 416(d)(1) (2012).

. The parties settled the first modification while it was on appeal. Michael, 839 N.W.2d at 633.