# In the Iowa Supreme Court

No. 24–1017

Submitted February 11, 2025—Filed March 14, 2025

**Bert Miller** and **Nancy Duffner,**

Appellants,

vs.

**State of Iowa,**

Appellee.

Appeal from the Iowa District Court for Johnson County, Kevin McKeever, judge.

Plaintiffs appeal the dismissal of their action under the Fraud in Assisted Reproduction Act. **Affirmed.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Karen A. Lorenzen (argued), James P. Hayes, and Michael H. Biderman of Hayes Lorenzen Biderman Lawyers PLC, Iowa City, for appellants.

Brenna Bird, Attorney General; Eric H. Wessan (argued), Solicitor General; William C. Admussen, Assistant Solicitor General; Christopher J. Deist, Assistant Attorney General; and Pope S. Yamada and Carolyn Russell Wallace of Phelan Tucker Law L.L.P., Iowa City, for appellee.

**Waterman, Justice.**

In this appeal, we must decide whether an Iowa statute enacted in 2022 retrospectively[1] imposes new civil liabilities on conduct occurring decades earlier. Iowa is one of many states in recent years to legislatively prohibit fertility doctors from surreptitiously using their own sperm to help infertile couples conceive through artificial insemination. The legislation responded to a wave of highly publicized discoveries of such misconduct discovered after individuals submitted DNA to commercial websites such as 23andMe.com and Ancestry.com. The plaintiffs in this case were shocked to learn that their biological father was actually their parents' fertility specialist employed by the State at the University of Iowa Hospitals during the 1950s. That doctor and the plaintiffs' parents are now deceased. These plaintiffs are among the first to sue the State under Iowa's Fraud in Assisted Reproduction Act (FARA). 2022 Iowa Acts ch. 1123, §§ 1–4 (codified at Iowa Code §§ 714I.1–.4 (2023)). That statute created a new private right of action against such fertility doctors and their employers. The district court granted the State's motion to dismiss on grounds that FARA operates only prospectively and provides no remedy for conduct occurring before its enactment.

The plaintiffs appealed, arguing that FARA, by eliminating limitation defenses and allowing the biological children of the fertility doctor to sue "at any time," necessarily applies to fertility fraud occurring years earlier. The State argues that FARA lacks any express retrospective language, and the district court correctly applied the statutory presumption that an enactment imposing new liabilities operates only prospectively. We retained the case.

---

[1]"The terms 'retroactive' and 'retrospective' are synonymous in judicial usage and have been used interchangeably." 2 Shambie Singer, *Statutes and Statutory Construction* § 41:1, at 317 (8th ed. 2022).

On our review, we hold that FARA does not apply to fertility fraud committed before the statute was enacted. FARA has no express retroactivity provision imposing liability for fertility fraud predating its enactment. Without such a provision, statutes creating new substantive liabilities are presumed to operate only prospectively, not to conduct occurring before the law goes into effect. There is no other language in FARA that rebuts the presumption against retroactivity. We affirm the district court's ruling dismissing this action with prejudice.

## I. Background Facts and Proceedings.

Bert Junior Miller and his wife, Donna Miller, lived in Iowa City. In the early 1950s, the couple struggled with fertility and were unable to conceive a child. Like many couples across the state, the Millers sought fertility treatment at the Department of Obstetrics and Gynecology at the University of Iowa Hospitals and Clinics in Iowa City. Dr. John H. Randall, the head of the department from 1952 until 1959, met with the Millers. With Dr. Randall's fertility treatments, Donna Miller had three children: Nancy (Miller) Duffner in 1954, Bert Jay Miller in 1956, and Randy Miller in 1958. Dr. Randall, who was born in 1899 and graduated from medical school in 1928, died in 1959 at age sixty. Bert Junior Miller died in 2010. Donna Miller died in 2018.

Donna's adult sons and daughter, now in their sixties, submitted their DNA to Ancestry.com. To their shock and surprise, the results revealed that the man who raised them was the biological father of only the youngest sibling, Randy. Dr. Randall was identified as the biological father of Bert and Nancy. They reasoned that Dr. Randall must have used his own sperm during their mother's fertility treatments instead of her husband's. Donna had never told her children that their biological father was anyone other than her husband.

The Millers were not alone in this experience. "Beginning in 2016, cases began to emerge where male OB/GYNs had used their own sperm in the 1970s through 1990s to inseminate unsuspecting patients, only to have their deeds exposed decades later through direct-to-consumer genetic testing services." Jody Lyneé Madeira, *Understanding Illicit Insemination and Fertility Fraud, From Patient Experience to Legal Reform,* 39 Colum. J. Gender & L. 110, 112 (2019). This fertility fraud was not actionable under existing criminal statutes, and "it has proven difficult to hold the physicians legally accountable." *Id.* at 113.

Some state legislatures responded by enacting statutes creating criminal and civil liability for healthcare providers who deceitfully use their own sperm during fertility treatments.[2] As noted, the Iowa Legislature enacted FARA in 2022. *See* 2022 Iowa Acts, ch. 1123, §§ 1–8 (codified at Iowa Code §§ 714I.1–.4 (2023); *id.* § 709.4A; *id.* § 802.2E). FARA prohibits fraud during fertility treatments, including providing false information about "[t]he identity of a donor of human reproductive material used or provided for assisted reproduction." Iowa Code § 714I.3(1)(*b*) (2023). FARA imposes criminal liability, with violations constituting sexual abuse in the fourth degree, *see id.* § 709.4A, and violations may also result in a loss of license to practice medicine, *id.* § 714I.3(4). FARA also provides civil remedies and a new private cause of action against the medical provider that can be brought by the patient, her spouse, or their children at any time without a statute of limitations. *See id.* § 714I.4(1), (6).

After discovering the identity of their biological father, Miller and Duffner asserted claims against the State under FARA, alleging that Dr. Randall's

---

[2]*See, e.g.*, Ark. Code Ann. § 16–118–117 (2021); Cal. Penal Code § 367g (West 2011); Colo. Rev. Stat. § 13–21–132 (2020); 815 Ill. Comp. Stat. 540/15 (2024); Ind. Code § 34–24–5–2 (2019); Ky. Rev. Stat. Ann. § 311.373(2)(b) (West 2022); La. Stat. Ann. § 14:101.2(B) (2024); Nev. Rev. Stat. § 200.975 (2023); Ohio Rev. Code Ann. § 4731.861 (West 2023).

deceitful actions entitled them to damages. The State Appeal Board denied their claims on October 2, 2023. The plaintiffs filed this civil action in district court against the State in February 2024. The plaintiffs sued exclusively under FARA. The plaintiffs alleged that Dr. Randall did not tell their parents that he had used his own sperm during the Millers' treatments. Specifically, they alleged that Dr. Randall "provid[ed] false information to Donna Miller . . . regarding the identity of a donor (himself) of human reproductive material" in violation of FARA.

The State moved to dismiss the lawsuit on grounds that FARA does not apply retroactively to Dr. Randall's conduct over sixty-five years earlier. The State argued that because FARA includes no express language providing for retroactive operation, the statute applies only prospectively. The plaintiffs resisted, arguing that magic words such as "retroactive" are not required. They also argued that the provision allowing children of parental victims the ability to bring claims "at any time" and without a statute of limitations evinces "a clear legislative intent that these claims can be brought many years after the provision of fertility fraud services."

The district court granted the State's motion to dismiss, ruling that FARA does not apply retrospectively to actions taken by healthcare professionals decades earlier. The district court reasoned:

> While FARA serves an important goal of preventing fraud in fertility treatments, the Court "must apply the new enactment as written, not by what the legislature might have said or intended. . . . The clear indication of intent for retroactive application must be found in the te[x]t of the statute; legislative history is no substitute." Because FARA contains no express language indicating legislative intent for retrospective application, the Court concludes that dismissal of this action is appropriate.

(Quoting *State v. Macke*, 933 N.W.2d 226, 233 (Iowa 2019).)

The plaintiffs appealed. They argue that FARA applies retroactively based on section 714I.4(6), which allows actions to be brought by the patient's children at any time without a statute of limitations. They contend the statute need not use the word "retroactive" to apply to conduct predating its enactment. The State responds that statutes are presumed to operate only prospectively, and the absence of express retrospective language is fatal to the plaintiffs' position. We retained the case.

## II. Standard of Review.

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Nahas v. Polk County*, 991 N.W.2d 770, 775 (Iowa 2023) (quoting *Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 298 (Iowa 2020)). "In our review, 'we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions.'" *Id.* (quoting *Benskin*, 952 N.W.2d at 298). "We will affirm a district court ruling that granted a motion to dismiss when the petition's allegations, taken as true, fail to state a claim upon which relief may be granted." *Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014).

## III. Analysis.

We must decide whether FARA applies retroactively to Dr. Randall's fertility fraud in the 1950s. The State argued, and the district court ruled, that the absence of express language allowing retrospective operation of the law means it only applies prospectively to fraud occurring after its enactment. The plaintiffs argue that FARA necessarily applies retroactively because it expressly allows the children of a victim of fertility fraud to bring a claim "at any time" without a statute of limitations. According to the plaintiffs, "[a] consequence of finding that the statute only has prospective application is that it renders it

potentially toothless for generations of victims of this type of conduct." We agree with the State and the district court.

To determine whether a statute applies retrospectively, we apply a three-pronged test. "[T]he court first must determine whether the statute's application 'is in fact retrospective.' " *Hedlund v. State*, 991 N.W.2d 752, 757 (Iowa 2023) (quoting *Nahas*, 991 N.W.2d at 777). If it is, then the court must determine "whether the statute should be applied retrospectively." *Id.* If it should, "then the court determines whether any substantive law bars the statute's retrospective application." *Id.* The parties agree that the three-pronged test used in *Hedlund v. State* controls.

The first prong is not in dispute in this case. As the district court noted "Both parties . . . agree that application of the statute to the facts in this matter would be retroactive because it would apply new obligations to practitioners and facilities when providing fertility services and impose new consequences if those obligations were not met." *See id.* ("An application is retrospective 'when a statute applies a new rule, standard, or consequence to a *prior* act or omission.' " (quoting *Hrbek v. State*, 958 N.W.2d 779, 782 (Iowa 2021))).

The fighting issue concerns the second step of the inquiry: "whether the statute should be applied retrospectively." *Hrbek*, 958 N.W.2d at 782. "This is a question of statutory interpretation." *Nahas*, 991 N.W.2d at 779. The legislature has enacted a statutory presumption against retroactive operation of statutes. Iowa Code section 4.5 provides, "A statute is presumed to be prospective in its operation unless expressly made retrospective." The State argues that the absence of express language in FARA indicating it applies retroactively means it operates only prospectively. Yet the State concedes that magic words are not required; the statute need not use the words "retroactive" or "retrospective" to

apply to conduct preceding its enactment. The plaintiffs argue that other language in FARA rebuts the presumption against retroactive operation. We will examine FARA to see if any of its express terms impose liability for fertility fraud that occurred before its effective date in 2022 and thereby rebut the presumption that the statute operates only prospectively.

FARA's section 3 specifies the practices and actions newly prohibited under FARA:

> 1. A person shall not engage in a practice or act the person knows or reasonably should have known provides false information to a patient related to an assisted reproduction procedure or treatment including false information relating to any of the following:
>
> *a.* The human reproductive material used or provided for assisted reproduction.
>
> *b.* The identity of a donor of human reproductive material used or provided for assisted reproduction including but not limited to the donor's name, birthdate, or address at the time of donation.
>
> *c.* A donor's medical history including but not limited to an illness of the donor at the time of donation, any past illness of the donor, or the social, genetic, or family history of the donor.
>
> 2. A health care professional or a health facility shall not knowingly or intentionally do any of the following:
>
> *a.* Use or provide a patient with human reproductive material for assisted reproduction other than that to which the patient expressly consented in writing.
>
> *b.* Use or provide a patient with human reproductive material for assisted reproduction that is not provided with the donor's consent or in a manner or to an extent other than that to which the donor consented.

Iowa Code § 714I.3(1)–(2). Dr. Randall's alleged conduct would have been prohibited by section 3 if FARA is applied retroactively. Section 3, however, speaks in the present tense: "A person shall not engage in a practice . . . the person knows . . . ." *Id.* § 714I.3(1). One might expect that a statute enacted to

address prior conduct would speak in the past tense. Notably, written informed consent was not required for medical procedures in the 1950s. The first Iowa statute requiring written consent from a patient was not enacted until 1975. 1975 Iowa Acts ch. 239, § 17 (codified at Iowa Code § 147.137 (1977)). FARA goes further by requiring the patient's express written consent for donor sperm. Iowa Code § 714I.3(2)(*a*). The State argues it is nonsensical to impose liability for a statutory written consent requirement that did not exist at the time the fertility service was provided. We agree.

The bill that enacted FARA included criminal penalties. *See* 2022 Iowa Acts, ch. 1123, § 7 (codified at Iowa Code § 709.4A (2023)). Iowa Code section 709.4A provides:

> 1. A health care professional commits sexual abuse in the fourth degree when the health care professional uses or provides a patient with human reproductive material for assisted reproduction other than that to which the patient expressly consented in writing in violation of section 714I.3, subsection 2.

> 2. Sexual abuse in the fourth degree is an aggravated misdemeanor.

> 3. *a.* Notwithstanding subsection 2, sexual abuse in the fourth degree is a class "D" felony if the health care professional uses or provides the health care professional's own human reproductive material for assisted reproduction in violation of section 714I.3, subsection 2.

> *b.* A parent-child relationship between a child and a health care professional is not created for any legal purpose when the child is born as the result of being conceived through commission of sexual abuse in the fourth degree as described in this subsection.

The plaintiffs concede that these criminal penalties cannot apply retrospectively under the ex post facto clause of the Federal and Iowa Constitutions. *See* U.S. Const. art. I, § 9, cl. 3; Iowa Const. art. I, § 21. "In enacting a statute, it is presumed that . . . [c]ompliance with the Constitutions of the state and of the

United States is intended." Iowa Code § 4.4(1). Interpreting FARA to operate only prospectively avoids that ex post facto problem. The plaintiffs cite no statute imposing both criminal penalties and civil remedies where we have interpreted the civil remedies to apply retroactively while limiting the criminal penalties to postenactment conduct.

Section 4 of FARA creates a new civil private right of action against healthcare providers, with two categories of potential plaintiffs:

> 1. A cause of action for damages against any person in violation of section 714I.3, subsection 2, may be brought in accordance with the following:

> *a.* (1) (a) By the patient or the spouse of the patient, if the patient conceives and gives birth to a child through assisted reproduction in violation of section 714I.3, subsection 2.

> (b) By a child born as the result of being conceived through assisted reproduction in violation of section 714I.3, subsection 2, if the patient who conceived and gave birth to such child or the patient's spouse is deceased or is otherwise unable to bring such cause of action.

*Id.* § 714I.4(1)(*a*)(1). If FARA applies retroactively, Duffner and Miller are proper plaintiffs under subparagraph 1, division b because both their mother Donna and her husband, the direct victims of Dr. Randall's fertility fraud, are deceased. The plaintiffs argue that allowing the children of parental victims the right to sue demonstrates "a clear legislative intent that these claims can be brought many years after the provision of fertility fraud services." But this provision says nothing about whether FARA applies retrospectively. As the district court correctly noted, this section "only addresses who has capacity to sue and nothing more."

The civil remedies allowed under FARA vary depending on whether the plaintiff is the patient, the patient's spouse, or their surviving children. All living plaintiffs may recover compensatory and punitive damages, court costs, and

reasonable attorney fees. *Id.* § 714I.4(3), (4). If the patient or her spouse is living, they can also recover a $200,000 statutory penalty. *Id.* § 714.4(3)(*b*). And the fertility doctor found to be the biological parent is personally liable for child support, medical support, and college expenses. *Id.* § 714I.4(3)(*a*).[3] The biological children of the fertility doctor are entitled to a statutory penalty of $5,000. *Id.* § 714I.4(4)(*a*). FARA thereby imposes substantial new civil liability to conduct within its reach. "Statutes which specifically affect substantive rights are construed to operate prospectively unless legislative intent to the contrary clearly appears from the express language or by necessary and unavoidable implication." *Anderson Fin. Servs., LLC v. Miller*, 769 N.W.2d 575, 578 (Iowa 2009) (quoting *Baldwin v. City of Waterloo*, 372 N.W.2d 486, 491 (Iowa 1985) (en banc)); *see also Hedlund*, 991 N.W.2d at 759 (describing the result in *Anderson Financial Services* as consistent with the second prong of our revised test). Such language is not found in section 4 of FARA.

The plaintiffs' argument that FARA applies retroactively relies primarily on Iowa Code section 714I.4(6), which provides:

> Notwithstanding any provision of law to the contrary, an action brought pursuant to this section is not subject to a statute of limitations and may be commenced at any time.

The district court noted that this provision simply shows a "legislative intent for chapter 714I to apply prospectively without time limits . . . [and] only describes how statutes of limitations apply to this chapter, not the application of the chapter to cases preceding FARA's effective date." We agree. A statute of limitation sets a deadline for when a party can sue; it does not define what conduct is subject to suit. *See, e.g., Cianzio v. Iowa State Univ.*, 14 N.W.3d 716,

---

[3]This relief for child rearing expenses is expressly subject to the statute of limitations for minors in Iowa Code section 614.8 and the child support guidelines. Iowa Code § 714I.4(3)(*a*).

720 (Iowa 2024) ("These statutes of limitations set the time limit by which a party must pursue an action or claim, but they have no necessary relationship to the damages available for an action or claim that is timely filed."). Section 714I.4(6) simply eliminates any time-bar when future violations of FARA are discovered through DNA testing more than six years after the fertility treatment, notwithstanding the general six-year statute of repose for medical malpractice claims in Iowa Code section 614.1(9)[4] or any other general limitations statute. Subsection 6 nowhere refers to conduct preceding FARA's enactment. In *Frideres v. Schiltz*, we held that the 1990 enactment of Iowa Code section 614.8A, which extended the statute of limitations for civil suits alleging sexual abuse of a minor, did "not apply retroactively to revive claims that have been barred by an applicable statute of limitations in existence prior to the enactment of section 614.8A." 540 N.W.2d 261, 267 (Iowa 1995) (en banc). We reach the same conclusion as to Iowa Code section 714I.4(6).

The plaintiffs argue the phrase "may be commenced at any time" is superfluous unless FARA operates retroactively. We acknowledge overlap between that phrase and the preceding phrase eliminating any statute of limitations. But both phrases are consistent with the prospective operation of FARA. We do not infer that any redundancy in subsection 6 means FARA retroactively imposes liability for fraud occurring before its enactment. "Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance . . . ." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012) [hereinafter Scalia & Garner, *Reading*

---

[4]The fraudulent concealment doctrine may allow lawsuits filed over six years after the medical care at issue notwithstanding section 614.1(9). *See Downing v. Grossmann*, 973 N.W.2d 512, 521–22 (Iowa 2022). But the plaintiff "must identify some act of concealment that is independent" of the doctor's underlying breach of a duty to disclose. *Id.* at 521.

*Law*]. Indeed, we have recently cautioned that "the surplusage canon should not be applied rigidly, and it should not be used to trump the ordinary meaning" of a statute. *State v. Rhodes*, 6 N.W.3d 741, 751 (Iowa 2024).

Notably absent from FARA is a retroactivity provision. By contrast, the Illinois FARA expressly provides that "it is the intent of the General Assembly that any civil action authorized by this Act shall be retroactive and apply to any treatment by a health care provider occurring prior to the effective date of this Act." 815 Ill. Comp. Stat. § 540/5 (2024). Our legislature could have included such language in the Iowa FARA but did not. On the other hand, Colorado's FARA expressly provides that it operates only prospectively, stating, "This act applies to causes of action arising or offenses committed on or after the applicable effective date of this act." 2020 Colo. Sess. Laws ch. 238, § 7(2). Another variation is found in the bill enacting Nevada's FARA which states, "The amendatory provisions of this act apply to a cause of action that accrues on or after July 1, 2023." 2023 Nev. Stat. ch. 227, § 21.

The Iowa legislature, when it chooses to do so, has expressly provided for retroactive operation in several recent enactments consistent with Iowa Code section 4.5. *See, e.g.*, 2021 Iowa Acts ch. 183, § 26 (stating that a law clarifying health insurance for public officers "applies retroactively to January 1, 2021"); 2020 Iowa Acts ch. 1070, § 11 (stating that the COVID-19 Response and Back-to-Business Limited Liability Act "applies retroactively to January 1, 2020"). We conclude that if the legislature wanted FARA to apply to conduct preceding its enactment, it would have said so in the enactment. It did not.

"We presume that the legislature knows the state of the law, including caselaw, when it enacts a statute." *Sutton v. Council Bluffs Water Works*, 990 N.W.2d 795, 799 (Iowa 2023). Our precedent requires greater clarity for

retroactive operation than we find in FARA. When a statute lacks express retroactivity language, we have repeatedly held the statute applies only prospectively. *See, e.g.*, *Nahas*, 991 N.W.2d at 779; *Hedlund*, 991 N.W.2d at 758 (holding that amendment to whistleblower statute allowing new damages remedy could not be applied retrospectively when "[t]he legislature included no express language . . . to give it retrospective application"); *Macke*, 933 N.W.2d at 233 ("If the legislature wanted the amendments to Iowa Code sections 814.6 and 814.7 to apply retroactively, it had to say so expressly.").

Our cases demonstrate this point. In *Nahas v. Polk County*, Jim Nahas sued county officials alleging he was wrongfully terminated from employment on January 5, 2021. 991 N.W.2d at 775. Months after he was fired, the legislature enacted a bill that expanded qualified immunity for state and municipal employees. *See* 2021 Iowa Acts ch. 183, §§ 12, 14 (codified at Iowa Code § 669.14A; *id.* § 670.4A (2022)). The statute went into effect on June 17, 2021. *Id.* § 16. The defendants moved to dismiss, arguing the new substantive immunity provision applied; the district court denied their motion on grounds the law did not apply retroactively. *Nahas*, 991 N.W.2d at 775–76. The new immunity provision stated:

> 1. *Notwithstanding any other provision of law*, an employee or officer subject to a claim brought under this chapter shall not be liable for monetary damages if any of the following apply:

> *a.* The right, privilege, or immunity secured by law was not clearly established at the time of the alleged deprivation, or at the time of the alleged deprivation the state of the law was not sufficiently clear that every reasonable employee would have understood that the conduct alleged constituted a violation of law.

Iowa Code § 670.4A(1)(*a*) (2022) (emphasis added). We held that the new immunity did not shield conduct occurring before the statute's enactment because the statute has "no express statement making the statutory immunity

provisions retrospective." *Nahas*, 991 N.W.2d at 779. The statute did not use the word "retrospective," nor did it use language directly indicating it was intended to shield actions taken before the law's enactment. *See id.* We also noted that the same legislation contained other provisions expressly made retrospective. *See id.*; 2021 Iowa Acts ch. 183, § 26 (providing that newly enacted Iowa Code § 80.6A(1)(*b*) "applies retroactively to January 1, 2021"). For those reasons, we determined that section 670.4A applied only prospectively. *See Nahas*, 991 N.W.2d at 779. We reached the same conclusion in *Carver-Kimm v. Reynolds* when we were asked to determine whether the statute regarding immunity for state employees applied retroactively.[5] 992 N.W.2d 591, 597 (Iowa 2023); Iowa Code § 669.14A. Relying heavily on our analysis of "a nearly-identical qualified immunity statute covering municipalities" in *Nahas*, we held that the statute applied only prospectively. *Carver-Kimm*, 992 N.W.2d at 597. It would be incongruous to hold that FARA imposes new liability on conduct occurring years earlier after we held that the new immunity statutes in *Nahas* and *Carver-Kimm* did not apply to conduct before their enactment. The absence of any express retroactivity provision in all three statutes compels the same result.

In arguing that no express retroactivity provision is needed for FARA to be applied retrospectively, the plaintiffs rely on two cases that are readily distinguishable. The first is *City of Waterloo v. Bainbridge*, 749 N.W.2d 245 (Iowa

---

[5]Iowa Code section 669.14A(1)(*a*) provides:

> Notwithstanding any other provision of law, an employee of the state subject to a claim brought under this chapter shall not be liable for monetary damages if any of the following apply . . . [t]he right, privilege, or immunity secured by law was not clearly established at the time of the alleged deprivation, or at the time of the alleged deprivation the state of the law was not sufficiently clear that every reasonable employee would have understood that the conduct alleged constituted a violation of law.

Notably, the same general assembly that enacted sections 670.4A and 669.14A also enacted FARA.

2008). *Bainbridge* merely addressed a new statutory procedure that applies to proceedings conducted after its enactment. *See id.* at 249–50. *Bainbridge* is not a case construing a statute imposing new substantive liability; rather, we merely used the default rule that courts should apply the procedural laws in effect at the time of the proceeding. *See id.*[6]

Second, plaintiffs rely on *Iowa Comprehensive Petroleum Underground Storage Tank Fund Board v. Shell Oil Co.*, 606 N.W.2d 370 (Iowa 2000). There, we were asked to determine whether a statute regulating underground petroleum storage tanks applied retrospectively to spills that occurred before the law's enactment. *See id.* at 375–76. Even though the statute did not use the word "retrospective," we held that the law applied retrospectively. *Id.* at 376. But we relied on statutory language not found in FARA. The statute expressly included a legislative finding which stated that "[i]t is necessary to provide a reasonable means to share the cost of *clean up of past and existing petroleum* leaks to make [Iowa's underground storage tanks] insurable and environmentally safe, and to protect groundwater safety." *Id.* at 375 (second alteration in original) (quoting 1989 Iowa Acts ch. 131, § 1(1), (3)). This express language demonstrated the law's retroactive operation. *Id.* FARA has no equivalent provision supporting its retroactive application to fertility fraud preceding its enactment.

The plaintiffs also argue that FARA must be applied retroactively to effectuate its purpose. We disagree. FARA operates prospectively to prohibit

---

[6]Applying the procedural rules in effect at the time of the proceeding has long been accepted as a permissible, nonretrospective practice. *See, e.g.*, *Hrbek*, 958 N.W.2d at 784 (explaining that a statutory rule of evidence applies to proceedings that occur after its effective date); *Dolezal v. Bockes*, 602 N.W.2d 348, 351 (Iowa 1999) ("In contrast to substantive legislation, procedural legislation applies to all actions—those that have accrued or are pending and future actions."); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 (1994) ("Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity.").

fertility fraud going forward and provide remedies when violations do occur. FARA cannot deter fraud that occurred before its enactment.

We have examined FARA for language providing for retroactive operations and found none. We therefore must apply the legislatively mandated presumption against retroactivity in Iowa Code section 4.5. *See also Hedlund,* 991 N.W.2d at 758 ("We ordinarily presume that statutes operate only prospectively."); Scalia & Garner, *Reading Law* 261 ("A statute presumptively has no retroactive application. . . . As a general, almost invariable rule, a legislature makes law for the future, not for the past."); 2 Norman J. Singer, *Statutes and Statutory Construction* § 41:2, at 376 (6th ed. 2001) ("Yet it has been held that a new enactment should not be held to judicially imply retroactivity if it is not expressly provided.").

"[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). "[A] requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Id.* at 268. We find no indication in FARA that the Iowa legislature made such a determination to apply the new statute to allow suits against the State for a doctor's fraud that took place over sixty-five years ago. We hold FARA does not apply retroactively.

Because the plaintiffs' claims fail under the second prong of the *Hedlund* test, we do not reach the third prong—whether any substantive law such as the due process clause bars FARA's retrospective application. *See Hedlund,* 991 N.W.2d at 757.

**IV. Disposition.**

For the foregoing reasons, we affirm the district court's ruling granting the State of Iowa's motion to dismiss this action with prejudice.

**Affirmed.**